# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
April 7, 2010 Session

## ELIZABETH SAMS TUETKEN v. LANCE EDWARD TUETKEN

**Appeal by Permission from the Court of Appeals, Western Section**
**Circuit Court for Shelby County**
**No. CT-001573-01     Donna M. Fields, Judge**

---

**No. W2008-00274-SC-R11-CV - Filed September 22, 2010**

---

We granted appeal in this case to determine the trial court's scope of review of the parties' arbitration award. After thoroughly reviewing the record, we conclude that the parties entered into binding arbitration governed by the Tennessee Uniform Arbitration Act ("TUAA") and reaffirm our holding in Pugh's Lawn Landscape Co., Inc v. Jaycon Development Corp., No. W2008-01366-SC-R11-CV, _ S.W.3d _, _ (Tenn. 2010), that the judicial review of an arbitration award is confined to the grounds enumerated in the TUAA. The provision in the parties' arbitration agreement modifying the trial court's scope of review therefore is invalid, and the invalidity of this provision is a mutual mistake justifying rescission of the parties' agreement to arbitrate. Because our holding necessitates additional proceedings on remand, we further hold that parenting issues may not be submitted to binding arbitration in Tennessee because such arbitration eliminates the trial court's determination of the children's best interests. We therefore reverse the judgment of the Court of Appeals, vacate the judgment of the trial court, and remand the case to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 11 Appeal by Permission;**
**Judgment of the Court of Appeals Reversed;**
**Case Remanded to Trial Court**

JANICE M. HOLDER, C.J., delivered the opinion of the Court, in which CORNELIA A. CLARK, GARY R. WADE, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Kay Farese Turner and Rachael Emily Putnam, Memphis, Tennessee, for the appellant, Elizabeth Sams Tuetken.

Adam N. Cohen and Mitchell D. Moskovitz, Memphis, Tennessee, for the appellee, Lance Edward Tuetken.

## OPINION

## I. Facts and Procedural History

Elizabeth Sams Tuetken ("Mother") filed a complaint for divorce in the Shelby County Circuit Court on March 13, 2001, against Lance Edward Tuetken ("Father"). The trial court entered a final decree of divorce on January 31, 2003, incorporating a parenting plan reflecting the trial court's ruling on issues related to the parties' son and daughter, who were ages eleven and six, respectively, at the time of trial. The parenting plan designated Mother as the primary custodial parent and required Father to pay child support. The parenting plan also addressed the children's schedules, the allocation of decision-making authority between Mother and Father, the children's daily care, and the rights of each parent when the children were not in his or her care.

In 2004 and 2005, Mother and Father filed cross-motions for civil contempt, each alleging that the other had failed to abide by one or more provisions in the parenting plan. In addition, Mother requested that Father's child support be modified to reflect an increase in his earnings. In anticipation of the entry of a consent order permitting arbitration of the parties' disputes, an arbitration hearing was held on June 20, 2006. On June 27, 2006, a "Parenting Arbitrator" submitted preliminary findings of fact and conclusions of law to the parties and requested that the parties review the document for clerical errors.

On June 28, 2006, the trial court entered a "Consent Order Appointing Parenting Arbitrator" ("consent order"). The consent order embodied the parties' agreement to arbitrate and provided the Parenting Arbitrator with the authority "to make decisions regarding the best interests of the parties' minor children."[1] The consent order detailed the

---

[1] The consent order reserved to the trial court a determination of the contempt motions and listed the following decisions as included in the authority of the Parenting Arbitrator:

    a.  Interpreting, implementing, ordering and changing parenting times, terms or conditions, including but not limited to changes in Primary Residential Parenting status;
    b.  Interpreting, implementing, ordering and changing telephone or correspondence contact;
    c.  Interpreting, implementing, ordering and changing orders regarding exchange and/or transportation of the child, including specific time, place and cost of exchange;
    d.  Interpreting, implementing, ordering and changing education, daycare, and/or extra-curricular activities for the child;
    e.  Making orders more specific so as to avoid violation of Court orders;
    f.  Interpreting, implementing, ordering or changing the times for religious observances and religious training for the child, if any;

(continued...)

manner in which an appeal from the Parenting Arbitrator could be initiated. The consent order also stated, "<u>There is no confidentiality as to any evidence presented at such hearings</u>."

The Parenting Arbitrator was required to decide all issues and to set forth findings of fact and conclusions of law if requested by either party. The parties agreed that a party challenging the Parenting Arbitrator's ruling was required to file a motion with the trial court within ten calendar days of receipt of the Parenting Arbitrator's ruling. The consent order further provided that "[i]n the event of an appeal, the decision of the arbitrator shall be binding on the parties pending the resolution of the matter by the Trial Court, and said decision shall carry with it a presumption of correctness." The parties also initialed a provision acknowledging "that the orders of the Parenting Arbitrator can be reviewed by the Court." If neither party filed a timely objection, "the Parenting Arbitrator shall cause his or her order to be signed by the Court."

Father filed a motion in the trial court objecting to the Parenting Arbitrator's June 27, 2006 decision. The Parenting Arbitrator thereafter filed amended findings and conclusions with the trial court requiring the parties to complete their child support worksheets and participate in another arbitration hearing to resolve issues concerning the education of the parties' son. Father filed a motion to continue the parties' second scheduled arbitration until his objections to the Parenting Arbitrator's June 27, 2006 decision could be heard by the trial court. He also filed a petition in the trial court to reduce his child support.

The trial court entered an order on May 18, 2007, ruling that Father was required to submit all issues to the Parenting Arbitrator in accordance with the consent order and that Father's motions had been raised prematurely. The trial court therefore denied Father's motion objecting to the Parenting Arbitrator's June 27, 2006 decision and dismissed his petition to reduce child support.

The Parenting Arbitrator conducted additional arbitration hearings. On August 15, 2007, she submitted her findings of fact and conclusions of law to the trial court and to the parties. These findings addressed child support, the son's education, both children's

---

[1] (...continued)

      g. Determining and ordering the appropriate medical, mental health, and counseling treatment (including psychotherapy, substance abuse counseling, domestic violence counseling, parenting, or anger management classes) or therapy;

      h. Ordering psychological testing of either or both parents or the minor children;

      i. Interpreting, implementing, ordering and changing child support and any other support required for the children;

      j. Any other issue of any nature, with the exception of contempt of court, which shall remain under the sole control of the Court.

uninsured medical expenses, transportation of the children between Mother and Father, and the parties' attorneys fees.

Father filed in the trial court a notice of objections to the Parenting Arbitrator's decision. On August 31, 2007, the trial court entered an order incorporating the Parenting Arbitrator's decision. In response to Father's motion seeking a ruling on his objections, Mother asserted that the parties had agreed to binding arbitration governed by the Tennessee Uniform Arbitration Act ("TUAA") and that the TUAA permits modification of an arbitrator's decision only under limited circumstances. See Tenn. Code Ann. §§ 29-5-312 to -314 (2000).

On December 7, 2007, the trial court conducted a hearing on Father's objections. The trial court determined that it was not prohibited by the TUAA from modifying the Parenting Arbitrator's ruling. The trial court then modified the Parenting Arbitrator's ruling as to three issues and expressly reserved five issues for an evidentiary hearing in addition to any other issues not completely adjudicated.

Mother appealed the trial court's order modifying the arbitrator's ruling. She based her appeal on section 29-5-319 of the TUAA, which states that "[a]n appeal may be taken from: . . . [a]n order modifying or correcting an [arbitrator's] award."[2] Tenn. Code Ann. § 29-5-319(a)(4) (2000). The Court of Appeals affirmed the trial court's modification of the Parenting Arbitrator's ruling holding that the parties had agreed to non-binding arbitration governed by Tennessee Supreme Court Rule 31.

## II. Analysis

On appeal, the parties do not dispute that the Parenting Arbitrator's decision may be appealed to the trial court. The issue before us therefore concerns only the scope of the trial court's review. Mother asserts that the trial court should apply the narrow scope of review provided in the TUAA, which governs binding arbitration. Father, on the other hand, asserts that the trial court should apply the broader scope of review included in the consent order. Before addressing this issue, we will first determine whether the consent order entered by the trial court provided for non-binding arbitration pursuant to Tennessee Supreme Court Rule 31, as held by the Court of Appeals.

---

[2] This section provides a limited exception to the rule that a final judgment adjudicating all of the claims, rights, and liabilities of all of the parties is required before an appeal. See Tenn. R. App. P. 3(a); In re Estate of Ridley, 270 S.W.3d 37, 41 (Tenn. 2008). Mother also filed a Tennessee Rule of Appellate Procedure 9 interlocutory appeal, which the Court of Appeals denied.

<u>A. Tennessee Supreme Court Rule 31</u>

Rule 31 sets forth the procedures for court-annexed alternative dispute resolution, including non-binding arbitration.[3] Tenn. Sup. Ct. R. 31. The goal of court-annexed alternative dispute resolution is to assist the parties in reaching voluntary settlements. See Tenn. Sup. Ct. R. 31 app. A, § 10. To this end, Rule 31 defines "Non-Binding Arbitration" as "a process in which a neutral person . . . considers the facts and arguments presented by the parties and renders a decision which is non-binding." Tenn. Sup. Ct. R. 31 § 2(*l*). Pursuant to Rule 31, non-binding arbitration is initiated by the trial court's entry of an Order of Reference, which is permissible only with the parties' consent. Tenn. Sup. Ct. R. 31 § 3(a), (d).

Viewed in its entirety, we conclude that the consent order in this case does not invoke the provisions of Rule 31 related to non-binding arbitration. The parties' agreement vests decision-making authority in the Parenting Arbitrator and provides for an appeal procedure to the trial court. This procedure is foreign to Rule 31. Rule 31, section 21 provides that neutrals serving in non-binding arbitrations are subject to Rule 31, Appendix A, "Standards of Conduct for Rule 31 Neutrals." In a subsection entitled "Neutral's Role," Appendix A states that "[i]n dispute resolution proceedings, decision-making authority rests with the parties. The role of the Neutral includes but is not limited to assisting the parties in identifying issues, reducing obstacles to communication, maximizing the exploration of alternatives, and helping the parties reach voluntary agreements." Tenn. Sup. Ct. R. 31 app. A, § 1(b). Accordingly, in non-binding arbitration the parties may accept the result of the arbitration, thereby reaching a voluntary agreement, or they may disagree with the result of the arbitration and return to the court for a resolution in that forum. Rule 31 does not vest decision-making authority in the arbitrator. Because the arbitrator's award is not binding, Rule 31 does not provide for appeal from the arbitrator's decision.

Our conclusion that the consent order is not governed by Rule 31 is reinforced by other provisions of Rule 31. For example, neutrals must "preserve and maintain the confidentiality of all information" obtained during the arbitration proceedings and may not divulge that information without the parties' consent. Tenn. Sup. Ct. R. 31 § 10(d). Also, Rule 31 makes it abundantly clear that information concerning the arbitration proceedings is inadmissible in the trial court. Neutrals filing a final report with the trial court pursuant

---

[3] In addition to non-binding arbitration, the trial court may order the parties, with their consent, to participate in "Mini-Trial[s], Summary Jury Trial[s], or other appropriate alternative dispute resolution proceedings." Tenn. Sup. Ct. R. 31 § 3(d). With or without the parties' consent, the trial court may order the parties to participate in a Rule 31 judicial settlement conference or mediation. Tenn. Sup. Ct. R. 31 § 3(b).

to Rule 31 must state "only: (i) which parties appeared and participated in the [proceedings]; (ii) whether the case was completely or partially settled; and (iii) whether the Rule 31 Neutral requests that the costs of the Neutral's services be charged as court costs." Tenn. Sup. Ct. R. 31 § 5(a). Rule 31 further provides that "[e]vidence of conduct or statements made in the course of [the ADR proceedings] shall be inadmissible to the same extent as conduct or statements are inadmissible under Tennessee Rule of Evidence 408." Tenn. Sup. Ct. R. 31 § 7. Contrary to these provisions, the parties' consent order emphasizes that "[t]here is no confidentiality as to any evidence presented" during the arbitration hearings and requires the Parenting Arbitrator to submit detailed findings and conclusions to the trial court.

In short, the role of the Parenting Arbitrator in this case, as described in the parties' consent order and in actuality, is inconsistent with the role of a neutral in a non-binding arbitration conducted pursuant to Rule 31.

We also put to rest the notion that Rule 31 governs not just non-binding arbitration, but some form of binding arbitration as well. In Team Design v. Gottlieb, 104 S.W.3d 512, 528 (Tenn. Ct. App. 2002), the Court of Appeals stated that "the 2001 amendments [to Rule 31] appear to permit the parties to agree that an arbitrator's award in a 'non-binding arbitration' proceeding will be 'final and binding,'" relying on Appendix B to Rule 31 in support of its conclusion. Id. at 528 & n.47. Initially, we observe that no provision of Rule 31 provides for binding arbitration. Section 2(*l*), however, defines "Non-Binding Arbitration" as "a process in which a neutral person or a panel . . . considers the facts and arguments presented by the parties and renders a decision which is non-binding as set forth in sections 14 and 21 herein."[4] Tenn. Sup. Ct. R. 31 § 2(*l*). Section 21 describes Appendix B as a "form order for use by parties and courts in fashioning their own orders for Non-Binding Arbitration." Id. at § 21.

---

[4] Section 14, entitled "Rule 31 Neutrals in Rule 31 Non-Binding Arbitration," provides

(a) The Parties may select any lawyer in good standing to act as an arbitrator in a non-binding arbitration.
(b) Where the court, pursuant to Section 4, appoints a Rule 31 Neutral to act as an arbitrator in a general civil case, the person appointed shall be a lawyer in good standing and shall have been admitted to practice for at least ten years.
(c) Where the court, pursuant to Section 4, appoints a Rule 31 Neutral to act as an arbitrator in a family case, the person appointed shall be a lawyer in good standing and shall have been admitted to practice for at least ten years, during which time a substantial portion of the lawyer's practice shall have been family cases.

Section 21, entitled "Non-Binding Arbitration," provides in part that "[t]rial courts, with the consent of the parties, are authorized to order Non-Binding Arbitration."

We acknowledge that paragraph 15 of Appendix B permits parties to "stipulate[] in writing that the award shall be final and binding." This provision should not be interpreted to alter the substance and intent of Rule 31. "This Court's role in construing statutes is to give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." State v. Flemming, 19 S.W.3d 195, 197 (Tenn. 2000). The traditional rules of statutory construction also apply to the construction of the Rules of the Tennessee Supreme Court. See Doe v. Bd. of Prof'l Responsibility of Supreme Ct. of Tenn., 104 S.W.3d 465, 469 (Tenn. 2003).

Consistent with the substantive provisions of Rule 31, the language in Appendix B simply permits parties to agree to make binding *the result* of their non-binding arbitration. Paragraphs 15 and 17 support this conclusion. The arbitrator may issue an award at which time the parties may stipulate that the award "shall be final and binding." Tenn. Sup. Ct. R. 31 app. B, ¶ 15. Then, "[u]pon stipulation of the parties, the clerk shall, in accordance with Rule 58, Tennessee Rules of Civil Procedure,[5] enter the award as the judgment of the court." Tenn. Sup. Ct. R. 31 app. B, ¶ 17 (footnote added). The agreement of the parties thereby becomes a consent order with "the same force and effect as a judgment of the court in a civil action, except that the judgment shall not be subject to review in any other court by appeal or otherwise." Tenn. Sup. Ct. R. 31 app. B, ¶ 17. This interpretation is consistent with Rule 31 and does not give undue emphasis to Appendix B. To the extent that Team Design v. Gottlieb suggests otherwise, it is overruled.

## B.  Tennessee Uniform Arbitration Act

Having determined that the parties' consent order was not governed by Rule 31, we turn to Mother's contention that the TUAA applies to the consent order in this case. In Tennessee, parties may agree to binding arbitration of their disputes even after legal proceedings have been commenced, as long as the substance of their dispute is properly amenable to binding arbitration and does not require adjudication by a court. In such circumstances, the arbitration proceeding is not governed by Tennessee Supreme Court Rule

---

[5] Tennessee Rule of Civil Procedure 58 provides, in pertinent part, as follows:

Entry of a judgment or an order of final disposition is effective when a judgment containing one of the following is marked on the face by the clerk as filed for entry:

(1)  the signatures of the judge and all parties or counsel, or
(2)  the signatures of the judge and one party or counsel with a certificate of counsel that a copy of the proposed order has been served on all other parties or counsel, or
(3)  the signature of the judge and a certificate of the clerk that a copy has been served on all other parties or counsel.

31 and instead is governed by the TUAA. See Tenn. Code Ann. §§ 29-5-301 to -320. The TUAA provides that

> (a)   A written agreement to submit any existing controversy to arbitration . . . is valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the revocation of any contract . . . .
>
> (b)   The making of an agreement described in this section providing for arbitration in this state confers jurisdiction on the court to enforce the agreement under this part and to enter judgment on an award thereunder.

Tenn. Code Ann. § 29-5-302. We have held that "[a] judgment by consent is in substance a contract of record made by the parties and approved by the court." Third Nat. Bank v. Scribner, 370 S.W.2d 482, 486 (Tenn. 1963). We therefore conclude that Mother and Father's agreement to arbitrate embodied in the consent order falls within the scope of the TUAA. See Pugh's Lawn Landscaping, Co. v. Jaycon Dev. Corp, No. W2008-01366-SC-R11-CV, __ S.W.3d __ , __ (Tenn. 2010).

The grounds on which a trial court may vacate, modify, or correct an arbitration award under the TUAA are limited. See Tenn. Code Ann. §§ 29-5-312 to -314;[6] see also Pugh's,

_____

[6] Three statutes describe the judicial review that a court must apply when asked to enforce an arbitration award pursuant to the TUAA. First, "the court shall confirm an award, unless, within the time limits hereinafter imposed, grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in §§ 29-5-313 and 29-5-314." Tenn. Code Ann. § 29-5-312. Second, "the court shall vacate an award" when:

> (1)  The award was procured by corruption, fraud or other undue means;
> (2)  There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;
> (3)  The arbitrators exceeded their powers;
> (4)  The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of § 29-5-306, as to prejudice substantially the rights of a party; or
> (5)  There was no arbitration agreement and the issue was not adversely determined in proceedings under § 29-5-303 and the party did not participate in the arbitration hearing without raising the objection. The fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.
> (b)  An application under this section shall be made within ninety (90) days after delivery of a copy of the award to the applicant, except that, if predicated upon corruption, fraud or

(continued...)

-8-

__ S.W.3d at __ & n.__; <u>Arnold v. Morgan Keegan & Co., Inc.</u>, 914 S.W.2d 445, 448 (Tenn. 1996).

The scope of the trial court's review as included in the consent order is much broader than the trial court's review under the TUAA. Specifically, the consent order states that "[i]n the event of an appeal, the decision of the arbitrator shall be binding pending the resolution of the matter by the Trial Court, and said decision shall carry with it a presumption of correctness." Thus, it appears that Mother and Father attempted to enter into binding arbitration while preserving their right to appeal to the trial court and expanding the trial court's scope of judicial review.

We faced a similar situation in <u>Pugh's Lawn Landscaping Co. v. Jaycon Development Corp.</u>, __ S.W.3d at __. In <u>Pugh's</u>, as in this case, the parties agreed to arbitrate their dispute by entering into a consent order that provided for a broader scope of judicial review than is contemplated under the TUAA. We take this opportunity to reaffirm our holding in <u>Pugh's</u> that the judicial review of an arbitrator's award is confined to the grounds enumerated in the TUAA. <u>Id.</u> at __. We therefore invalidate the provision in the consent order embodying the agreement to arbitrate that purports to expand the trial court's scope of judicial review.

Having held that a provision in the agreement to arbitrate is invalid, we now must determine whether to reform or rescind the agreement to arbitrate. If we reform the agreement, our review would occur pursuant to the narrow review provisions of the TUAA.

---

[6] (...continued)
other undue means, it shall be made within ninety (90) days after such grounds are known or should have been known.

Tenn. Code Ann. § 29-5-313(a)-(b). Third, "the court shall modify or correct the award" if an application is "made within ninety (90) days after delivery of a copy of the award to the applicant," and

(1) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;
(2) The arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or
(3) The award is imperfect in a matter of form, not affecting the merits of the controversy.
(b) If the application is granted, the court shall modify and correct the award so as to effect its intent and shall confirm the award as so modified and corrected. Otherwise, the court shall confirm the award as made.
(c) An application to modify or correct an award may be joined in the alternative with an application to vacate the award.

Tenn. Code Ann. § 29-5-314.

-9-

If we rescind the agreement, we would remand the case to the trial court to adjudicate the merits of the parties' dispute. Applying traditional contract principles in Pugh's, we rescinded the agreement on the basis that the provision authorizing expanded judicial review was material to the parties' agreement and that its failure constituted a mutual mistake that was sufficient to defeat the contract. Id. at __. Our analysis in Pugh's applies with equal force in this case. As we explained,

> a consent order cannot be set aside unless entered through fraud or mistake. . . . [A] "mistake" exists in a legal sense when a person, acting on an erroneous conviction of law or fact, executes an instrument that he or she would not have executed but for the erroneous conviction. A court may not rescind a contract for mistake unless the mistake is innocent, mutual, and material to the transaction and unless the complainant shows an injury.

Id. at __ (citations omitted).

It is clear from the language of the consent order in this case that both parties agreed in good faith to preserve their right to appeal to the trial court and to expand the trial court's scope of judicial review. Thus, the mistake was mutual and innocent. Unlike the consent order in Pugh's, however, the consent order in this case does not describe the provision for judicial review as material consideration for the agreement to arbitrate. Nonetheless, the provision for expanded judicial review embodies a basic assumption on which the agreement to arbitrate was based and as such is material. See Restatement (Second) of Contracts § 152(1) (1981).[7] Likewise, the complainant, Father, has shown an injury in that his right to appeal is substantially limited by the failure of the consent order's judicial review provision. We therefore rescind the parties' agreement and hold that the failure of the judicial review provision in the parties' consent order renders their agreement to arbitrate invalid.

### C. Arbitration of Parenting Issues

Although the above analysis is dispositive of the present appeal, we recognize that our holding will necessitate additional proceedings on remand. In the interest of judicial economy and in the exercise of our supervisory role, we take this opportunity to address the

---

[7] The Restatement (Second) of Contracts § 152(1) provides that

[w]here a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he [or she] bears the risk of the mistake under the rule stated in § 154 [When a Party Bears the Risk of a Mistake].

question on which we requested briefing and argument when granting Mother's application for permission to appeal: whether Tennessee law permits parties to submit to arbitration issues that implicate the trial court's duty to ensure that the best interests of children are protected. This issue presents a question of law, which we review de novo. See In re Sidney J., 313 S.W.3d 772, 774 (Tenn. 2010).

Tennessee statutes, taken together, impose a duty on trial courts to protect the best interests of children. The general custody provisions provide that "the court may . . . award the care, custody and control of . . . children . . . as the welfare and interest of the . . . children may demand" and that "the court shall have the widest discretion to order a custody arrangement that is in the best interest of the child." Tenn. Code Ann. § 36-6-101(a)(1), (a)(2)(A)(i) (2005 & Supp. 2009). Furthermore, "in any . . . proceeding requiring the court to make a custody determination regarding a minor child, the determination shall be made on the basis of the best interest of the child." Tenn. Code Ann. § 36-6-106(a) (Supp. 2009). With respect to parenting plans, like the one at issue in this case, the General Assembly has stated that "the best interests of the child shall be the standard by which the court determines and allocates the parties' parental responsibilities." Tenn. Code Ann. § 36-6-401(a) (2005).[8]

This statutory duty comports with the longstanding notion that the state stands in *parens patriae* of the minor children within its borders. As early as 1918, this Court stated, in the context of habeas corpus proceedings, that the state has a right "paramount to any parental or other claim, to dispose of such children as their best interests require. The legal rights of a parent are very gravely considered, but are not enforced to the disadvantage of the child." State v. West, 201 S.W. 743, 744 (Tenn. 1918).

Nonetheless, relying on our decision in Hawk v. Hawk, 855 S.W.2d 573 (Tenn. 1993), Mother argues that, absent a showing of substantial harm, divorced parents have a fundamental right to submit disputes concerning children to final and binding arbitration. Mother's reliance on Hawk is misplaced. Although we held in Hawk that the state lacks justification to interfere with the fundamental rights of parents in an intact marriage to raise their children absent a showing of harm to the child, id. at 582, we also held that harm to a child is implicit in a divorce proceeding. Id. at 580; see Tenn. Code Ann. § 36-6-401(a) (recognizing "the detrimental effect of divorce on many children."); Lee v. Lee, 66 S.W.3d

---

[8] Other provisions implicate the trial court's duty to ensure that the best interests of children are protected. See e.g., Tenn. Code Ann. § 36-1-101(a)(3) (2005) (stating that one purpose of Tennessee's adoption statutes is to ensure that "the best interests of children in the adoptive process are protected"); Tenn. Code Ann. § 36-6-306(c) (2005 & Supp. 2009) (stating that after a determination of substantial harm has been made, "the court shall then determine whether grandparent visitation would be in the best interests of the child").

837, 847 (Tenn. Ct. App. 2001) (identifying divorce as "one circumstance that 'invites, and indeed requires, governmental intervention' into the parents' constitutionally protected fundamental liberty interest in the care and custody of their children").

Contrary to Mother's argument, there is nothing in Tennessee's statutes or the law of this Court to support the conclusion that by agreeing to arbitrate, parties may relieve the trial court of its duty to ensure that disputes between parents are resolved in the best interests of the children. Rather, it is well established that parents cannot bind the court with an agreement affecting the best interest of their children. We held in Berryhill v. Rhodes, for example, that parents may not enter into private agreements that circumvent statutory child-support obligations. 21 S.W.3d 188, 192 (Tenn. 2000). It follows that parents cannot bind the court by submitting child-related issues to an arbitrator. See Crutchley v. Crutchley, 293 S.E.2d 793, 798 (N.C. 1982) ("'Just as parents cannot by agreement deprive the courts of their duty to promote the best interests of their children, they cannot do so by arbitration.'" (quoting Kovacs v. Kovacs, 633 A.2d 425, 431 (Md. Ct. Spec. App. 1993)); Kelm v. Kelm, 749 N.E.2d 299, 303 (Ohio 2001) ("[I]f parents cannot bind the court by an agreement affecting the interests of their children, they cannot bind the court by agreeing to let someone else, an arbitrator, make such a decision for them.").

Furthermore, as we explained in Pugh's, the limited review procedures that accompany binding arbitration are justified by the need to promote finality of arbitration awards. Pugh's, __ S.W.3d at __. Although an important factor, the need to promote finality is not the prevailing concern in resolving child-related matters. Rather, the prevailing concern is ensuring that the best interests of the child are protected. See Tenn. Code Ann. § 36-6-106(a); Kendrick v. Shoemake, 90 S.W.3d 566, 570 (Tenn. 2002) (holding that child custody awards are always subject to modification to ensure that the best interests of the child are protected).

We therefore hold that parties may not submit parenting issues to binding arbitration.[9] Parties may submit such disputes to non-binding arbitration. If the parties agree with the

---

[9] Other jurisdictions have held that binding arbitration of parenting issues deprives courts of their obligation to ensure that those issues are resolved in the best interests of the children. Nashid v. Andrawis, 847 A.2d 1098, 1102 (Conn. App. Ct. 2004) (concluding that the submission of child-related matters to an attorney for binding arbitration was an improper delegation of judicial authority and plain error); Toiberman v. Tisera, 998 So.2d 4, 9 (Fla. Dist. Ct. App. 2008) (reversing the trial court's delegation of its judicial authority to an arbitrator to decide matters relating to child custody, visitation, or child support as mandated by Florida statute); Glauber v. Glauber, 600 N.Y.S.2d 740, 743 (N.Y. App. Div. 1993) ("The court's traditional power to protect the interests of children cannot yield to the expectation of finality of arbitration awards."); Crutchley, 293 S.E.2d at 798; Kelm, 749 N.E.2d at 301-03.

-12-

result produced, the parties must submit the agreement to the trial court for a determination of the children's best interests.

### III. Conclusion

For the reasons articulated above, we hold that the provision in the parties' consent order authorizing judicial review is invalid and that its invalidity is a mutual mistake justifying rescission of the parties' agreement to arbitrate. We further hold that parenting issues may not be submitted to binding arbitration in Tennessee. If the parties reach an agreement concerning parenting issues through the use of non-binding arbitration under Rule 31, such agreement must be submitted to the trial court for a determination of the children's best interests. We therefore reverse the judgment of the Court of Appeals, vacate the judgment of the trial court, and remand the case to the trial court for further proceedings consistent with this opinion. Costs of this appeal are assessed equally between the appellant, Elizabeth Sams Tuetken, and the appellee, Lance Edward Tuetken, for which execution may issue if necessary.

_____
JANICE M. HOLDER, CHIEF JUSTICE