IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 4, 2011 Session

## TONYA RENEE FLETCHER
v.
## GLEN ALLEN FLETCHER

**Appeal from the Chancery Court of Bedford County**
**No. 23,574     J.B. Cox, Chancellor**

**No. M2010-01777-COA-R3-CV - Filed September 26, 2011**

This post-divorce appeal involves parenting issues. The parties, parents of two minor children, divorced pursuant to a marital dissolution agreement. After post-divorce custody disputes arose, the parties went through mediation and arrived at an agreed parenting plan. The next day, the mother repudiated the agreement. The father then filed a motion to enforce the mediation agreement. The mother requested an evidentiary hearing on whether the parenting arrangement embodied in the mediated parenting plan was in the best interest of the children. The trial court declined to hear any evidence, and found that the mediated parenting plan was a valid, enforceable contract. It entered an order enforcing the mediated parenting plan. The mother now appeals. We reverse, holding that the trial court erred in applying contract analysis to the mediated parenting plan, and remanding for an evidentiary hearing on whether the parenting arrangement in the mediated parenting plan is in the best interest of the minor children.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of Chancery Court Reversed and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Norris A. Kessler, III, Winchester, Tennessee, for Defendant/Appellant, Tonya Renee Fletcher.

Doug Aaron, Manchester, Tennessee, for Plaintiff/Appellee, Glen Allen Fletcher.

# OPINION

## FACTS AND PROCEEDINGS BELOW

Defendant/Appellant Tonya Renee Fletcher ("Mother") and Plaintiff/Appellee Glen Allen Fletcher ("Father") were divorced in May 2001 by consent decree. Their marital dissolution agreement incorporated a permanent parenting plan that resolved the parenting issues as to their two minor children, a son born in 1996 and a daughter born in 2000. Under the agreed parenting plan, the parties had "shared custody" of their two children, with Mother designated as the primary residential parent. Father was allocated parenting time every other weekend, with provisions for other parenting time on holidays and in the summer, by agreement of the parties.

Subsequently, Father apparently filed a petition to modify the agreed parenting arrangement. Although his petition is not in the appellate record, the parties' disputes apparently included Father's concerns that Mother would suffer a seizure[1] while the children were in her care, and inappropriate behavior by the parties and their family members in the presence of the children, frequently at the exchange between the parents. The trial court held evidentiary hearings on Father's petition in August, October, and November 2003. An order was entered in January 2004, and subsequently a modified parenting plan was entered.[2] Mother had apparently remarried, and under the January 2004 order, while Mother remained the primary residential parent, she was required to move into her new spouse's home and to have another adult in the home when the children were present, in the event that Mother suffered a seizure while the children were in her care. Father was given more parenting time, the place of exchange was changed to a local police department, and the parties were enjoined to conduct themselves appropriately.

In October 2008, Father filed another petition to modify the parenting plan. By that time, Mother was apparently no longer married or was not living with her husband, and her mother ("Grandmother") was living with Mother and the children. Grandmother was the mandated "other adult" required to be in Mother's trailer home when the children where there, pursuant to the January 2004 order. Father's petition asserted that Grandmother had been convicted of selling illegal drugs and was scheduled to begin her incarceration later that month, October 2008. To comply with the requirement to have another adult present, Father's petition asserted, Mother was planning to have her father ("Grandfather") move into her

---

[1] The underlying physical condition causing Mother's seizures is not disclosed in the appellate record.

[2] For reasons that are not apparent from the record, the parenting plan was signed by the trial judge in May 2006 and entered *nunc pro tunc* as of January 23, 2004.

home, and Grandfather reportedly had several convictions for driving under the influence (DUI). In addition, Father's petition asserted, Mother had pending charges of DUI and possession of illegal drugs, and was on probation for shoplifting. Father's petition stated that he had remarried and was living in a large home in Georgia. Father asserted a material change in circumstances and sought sole custody of the children. Father's petition attached supporting documents such as arrest reports on Mother and Grandmother.

In November 2008, the trial court held a hearing on Father's petition. After Mother testified on direct examination, a recess was taken. During the recess, the parties apparently reached an agreement on the parenting disputes. As a result, the trial court entered an "Agreed Temporary Custody Order," under which Father was designated the primary residential parent of both children. Mother was granted parenting time every other weekend. The children thereafter began residing with Father in Georgia.

Approximately a year later, in December 2009, Mother filed a petition for modification of the "Agreed Temporary Custody Order." Mother alleged a material change in circumstances since entry of the order. Mother asserted, *inter alia*, that Father was not providing proper medical and dental care for the children, did not keep her informed about the children's medical and dental issues, interfered with her telephone visitation, did not notify her about the children's extracurricular activities, and sent the children to visit her when they had staph infections. Mother sought to regain her designation as the primary residential parent. She filed a motion to allow the children to testify as to their preference on custody. Father filed a response, denying Mother's allegations and denying any material change in circumstances.

On March 30, 2010, the parties participated in a mediation of their disputes. On April 12, 2010, the mediator filed a short report, informing the trial court that the mediation occurred, and that both parties and their attorneys were present. The report stated simply: "The mediation was successful."

Almost two months later, Father filed a motion "to enforce" the agreement that resulted from the mediation. The motion attached a form Permanent Parenting Plan Order, filled in by handwriting, and signed by the parties on the day of the mediation, March 30, 2010. The form order retained Father as the children's primary residential parent, with alternate parenting time for Mother. It did not include the requirement that Mother have another adult in her home if the children were present. Father's motion to enforce the agreement asserted that the mediation was "fruitful" and that "[a]ll were satisfied with the outcome of mediation." It stated that the parties reduced their agreement to writing, namely, the attached parenting plan. The motion claimed that Mother "breached" the agreement by refusing to sign the final order, and asked the trial court to "adopt[] and enforce[]" the parenting plan.

In response to Father's motion to enforce the mediation agreement, Mother admitted that the mediation took place and that "the agreement was reduced to writing," but denied that the mediation was "fruitful" or that "all were satisfied with the outcome of mediation." Mother acknowledged that the agreement Father sought to enforce had been signed by the parties, but asserted that the agreement was "not in the best interest of the children." She argued that, even with a signed, mediated agreement, the trial court was nevertheless required to conduct a best interest analysis, citing authority. Mother's pleading asked the trial court to set aside the mediated parenting plan and hold a hearing in which the children would be permitted to testify as to their preference on custody.

On July 23, 2010, the trial court held a hearing on Father's motion to enforce the mediated agreement, and Mother's cross-motion to set aside the agreement. Only the attorneys for the parties were present at the hearing. Mother's attorney acknowledged that the mediation occurred and resulted in a handwritten agreed parenting plan that both parties signed. The next day, Mother informed her attorney that she had not realized that her signature to the agreed parenting plan would preclude a hearing at which the parties' children would be permitted to testify as to their preference on custody. Consequently, Mother refused to sign a final agreed parenting plan. Mother argued that the custody of the parties' children could not be determined by contract, and asked the trial court to conduct an evidentiary hearing and allow the children to testify.

Father's counsel stressed that both parties were represented by counsel at the mediation, that the parties "negotiated an arm's length transaction," and that the resulting written agreement "was signed, sealed, delivered." Father contended that enforcement of the mediated agreement was "in the best interest of the children."

After hearing the arguments of counsel, the trial court noted that there were no allegations of fraud, duress, or any other contract principle to vitiate the mediated agreement. (7.) Citing **Barnes v. Barnes**, 193 S.W.3d 495 (Tenn. 2006), it rendered the following oral ruling:

> . . . I honestly believe that part and parcel of a settled permanent parenting plan, mediated, negotiated permanent parenting plan is a pledge to the Court, that the plan as negotiated is in the best interests of the children. That should be the lynchpin behind which you-all began, and I am sure that's part and parcel of what the negotiations were without having to go into it. I think I am prejudicially bound by Barnes.
>
> * * *
>
> . . . I think that I am bound by that under the circumstances. It sounds like the process too, based upon you-all's representations, was not only thoroughly

-4-

entered into, but completely. . . . I think I am forced under the Barnes rationale
to enforce the mediated agreement.

After that, on July 30, 2010, the trial court entered its "Order Enforcing Mediation Custody Agreement." The order stated that the matter came to be heard based on Father's motion to enforce the mediation agreement and Mother's cross-motion to set it aside. The order stated that the trial court had "inspected the mediation agreement," which reduced to writing the parties' full agreement and was signed by both. The trial court noted that the attorneys for both Mother and Father "regularly practice before the Court and are competent attorneys in good standing with the Court." It observed that there were no allegations "of coercion, duress or fraud . . . as a basis to set aside the agreement."

The trial court stated that it was being asked to determine whether the mediated agreement was "a valid and enforceable contract" and to "perform an analysis to determine that the agreement is in the best interest of the minor children." Finding that *Barnes* "must be followed in the analysis of this case," the trial court held as follows:

> The Court finds that the Parenting Plan form is sufficient to find a contract. The proof at the hearing was the parties' intent was to resolve all issues raised by the case. Counsel represented both parties and the mediator signed off on the agreement along with both parties. Clearly there was a meeting of the minds to resolve the issues.

> Secondly the Court finds that implicit in this mediation agreement is the understanding that it was proposed in good faith and in the best interest of the minor children. A review of the history of the parties' specific circumstances and the past and present circumstances of the minor children, (as gleaned from the Court file, the pleadings and from argument of counsel) the Court finds the mediation agreement is in the best interest of the minor children.

On this basis, the trial court granted Father's motion to enforce the mediation agreement and dismissed Mother's motion to set it aside.[3] From this order, Mother now appeals.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Mother asserts that the trial court erred in granting Father's motion to enforce the mediation agreement based on *Barnes,* in the absence of proof regarding the best interests

_____

[3]Although the Order Enforcing Mediation Custody Agreement refers to "[t]he proof at the hearing," this is an apparent misstatement. It is undisputed that no proof was heard at the July 23, 2010 hearing.

of the parties' children. Father asserts that the trial court was not required to conduct an evidentiary hearing on custody, and that it correctly granted his motion to enforce the mediation agreement.

On appeal, "[w]hen the trial court has set forth its factual findings in the record, we will presume the correctness of these findings so long as the evidence does not preponderate against them." *Evans v. Evans*, No. M2002-02947-COA-R3-CV, 2004 WL 1882586, at \*4 (Tenn. Ct. App. Aug. 23, 2004) (citing TENN R. APP. P. 13(d); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000)); *accord. Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 424 (Tenn. Ct. App. 2005). We review the trial court's conclusions of law *de novo* with no presumption of correctness. *Nashville Ford Tractor, Inc.,* 194 S.W.3d at 425.

In general, "[t]rial courts are vested with wide discretion in matters of child custody" and "the appellate courts will not interfere except upon a showing of erroneous exercise of that discretion." *Woods v. Tidwell*, No. M2009-01972-COA-R3-CV, 2011 WL 1662900, at \*3 (Tenn. Ct. App. May 3, 2011) (quoting *Koch v. Koch*, 874 S.W.2d 571, 575 (Tenn. Ct. App. 1993). The abuse of discretion standard has been described as follows:

> Under the abuse of discretion standard, the trial court's decision is affirmed "so long as reasonable minds can disagree as to the propriety of the decision made." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citing *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000). This Court is not permitted "to substitute its judgment for that of the trial court." *Id.* (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998)). The trial court may abuse its discretion by applying an incorrect legal standard or reaching as decision against logic or reasoning that causes an injustice to the complaining party. *Id.* (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)).

*Andrews v. Andrews,* ___ S.W.3d ___, ___, No. W2009-00161-COA-R3-CV, 2010 WL 3398826, at \*16 (Tenn. Ct. App. Aug. 31, 2010).

### ANALYSIS

Mother asserts that the trial court erred in refusing her request for an evidentiary hearing before making its decision on Father's motion to enforce the mediated custody agreement. She contends that the trial court erroneously based its decision on *Barnes v. Barnes*,193 S.W.3d 495 (Tenn. 2006). Mother argues that the trial judge has the responsibility to

determine the best interest of the parties' minor children, was not bound by the mediated agreement, and was obliged to hear evidence on the children's best interests before making his decision. In support, Mother cites Tenn. Code Ann. § 36-6-106(a) (2010); T.C.A. § 36-6-401(a) (2010); *Tuetken v. Tuetken*, 320 S.W.3d 262 (Tenn. 2010); *Greer v. Greer*, No. W2009-01587-COA-R3-CV, 2010 WL 3852321, at *7 (Tenn. Ct. App. Sept. 30, 2010); and *In the Matter of D.M.H. and A.L.H.*, No. W2006-00270-COA-R3-JV, 2006 WL 3216306, at *1 (Tenn. Ct. App. Nov. 8, 2006).

In response, Father asserts that the trial court was not required to hear proof before determining that the mediated parenting plan was in the best interest of the minor children. He cites the general rule that "a party is presumed to know the contents of a contract he or she has signed." Father acknowledges that a parenting plan is not a contract in the same way that a marital dissolution agreement may be viewed as a contract, but contends that Mother cannot simply change her mind about a signed, mediated parenting plan, and that such an agreement cannot be set aside "for just any reason." In support, Father cites *Vaccarella v. Vaccarella*, 49 S.W.3d 307, 315 (Tenn. Ct. App. 2001), and *Barnes*, relied on by the trial court. He concedes that *Tuetken* holds that "parents cannot bind the court with an agreement affecting the best interest of their children," but argues that *Tuetken* does not mandate an evidentiary hearing in every case. *Tuetken*, 320 S.W.3d at 272. Father cites the trial court's history with the parties in this case as sufficient to support its holding, even without hearing proof. He argues that agreed parenting plans are often entered by trial courts without an evidentiary hearing, and that it would be impractical to require such a hearing in every case.

We start, of course, with the applicable statutes. Tennessee Code Annotated § 36-6-101 authorizes the trial court in a divorce or other proceeding "where the custody of a minor child . . . is a question" to enter an order awarding "the care, custody and control of such child" to either parent or both parents.[4] Tenn. Code Ann. § 36-6-101(a)(1) (2010). The statutes mandate that such a custody "determination shall be made on the basis of the best interest of the child." Tenn. Code Ann. § 36-6-106(a) (2010). This is emphasized in the statutes regarding parenting plans, which state that parents have the responsibility to care for their minor children, and in a legal proceeding between the parents, "the best interests of the child shall be the standard by which the court determines and allocates the parties' parental responsibilities." Tenn. Code Ann.§ 36-6-401(a) (2010). In allocating the parenting responsibilities between the parents, "the court shall have the widest discretion to order a custody arrangement that is in the best interest of the child." Tenn. Code Ann. § 36-6-101(a)(2)(A)(i). Thus, Tennessee's statutes embrace the standard stated so eloquently in *Bah*

---

[4]The award may be to a non-parent if the welfare and interest of the child require it. Tenn. Code Ann. § 36-6-101(a)(1) (2010).

*v. Bah*: "[T]he child's best interest is the paramount consideration.  It is the polestar, the *alpha and omega*."  ***Bah v. Bah***, 668 S.W.2d 663, 665 (Tenn. Ct. App. 1983).

The trial judge's responsibility for protecting the best interests of children involved in legal proceedings before the court was discussed at length in ***Tuetken v. Tuetken***, 320 S.W.3d 262 (Tenn. 2010).  In ***Tuetken***, the parties, divorced parents of two minor children, agreed to a consent order requiring the parents to submit parenting disputes to an arbitrator and giving the arbitrator the authority to make decisions regarding the best interests of the parties' children.  ***Id.*** at 264.  After the father objected to a decision by the parenting arbitrator, the trial court modified the arbitrator's decision.  ***Id.*** at 266.  The mother appealed,  arguing that the trial court had authority to modify the parenting arbitrator's decision only within the limits of Tennessee's arbitration statutes.  ***Id.***  After the intermediate appellate court affirmed the trial court's decision, the mother appealed to our Supreme Court.  ***Id.***

On appeal, the Supreme Court in ***Tuetken*** considered the issue of "whether Tennessee law permits parties to submit to arbitration issues that implicate the trial court's duty to ensure that the best interests of the children are protected."  ***Id.*** at 271.  Commenting on the statutes outlined above, the ***Tuetken*** Court observed that, "taken together, [the statutes] impose a duty on trial courts to protect the best interests of children."  ***Id.***  It found that prior cases had established that parents cannot bind the court by entering into an agreement that impacts the best interest of their children.  ***Id.*** at 272.

The ***Tuetken*** Court acknowledged that the State arbitration statutes, which provided for only limited court review of arbitration awards, reflected policies supporting the finality of arbitration awards.  ***Id.***  It then observed:

> Although an important factor, the need to promote finality is not the prevailing concern in resolving child-related matters.  Rather, the prevailing concern is ensuring that the best interests of the child are protected.

***Id.***  On that basis, the ***Tuetken*** Court held that "parties may not submit parenting issues to binding arbitration."  ***Id.***  It elaborated:

> Parties may submit such [parenting] disputes to non-binding arbitration.  If the parties agree with the result produced, the parties must submit the agreement to the trial court for a determination of the children's best interests.

***Id.*** at 272-73.

*Tuetken* was applied by this Court in *Greer v. Greer*, No. W2009-01587-COA-R3-CV, 2010 WL 3852321, at \*7 (Tenn. Ct. App. Sept. 30, 2010). In *Greer*, as in the case at bar, the divorced parents of minor children went through court-ordered mediation and arrived at an agreement regarding numerous parenting issues. *Id.* at \*2. At the ensuing trial, the trial court took proof on the issues on which the parties had agreed during the mediation, and ultimately entered an order that differed from the mediated agreement. *Id.* at \*2-5. The father appealed, arguing that the trial court erred in disregarding the agreement reached on parenting issues after the court-ordered mediation. *Id.* at \*6.

On appeal, this Court in *Greer* held that, under *Tuetken*, the trial court should consider a mediated agreement between the parents on parenting issues, but was not bound by such an agreement. *Id.* at \*7. Instead, *Greer* stated, the trial court was obliged to "evaluate whether the agreed arrangement is in the best interest of the children." *Id.* The *Greer* Court observed:

> While an agreement on parenting issues would ideally reflect the parties' considered judgment on the arrangement that would best fit the needs of their children, it is also recognized that other factors can come into play in such an agreement, such as the original dysfunction in the parties' relationship, inequality of resources, reluctance to involve the children in the litigation, or even the parties' desire to get the divorce "over with." For that reason, the trial court has broad discretion to determine an appropriate parenting plan in light of the evidence adduced at a hearing and the best interest of the children, even where the parties have reached an agreement on such issues.

*Id.* (citations omitted). Thus, *Greer* held that the trial court was not bound by the parties' mediated agreement on parenting issues and affirmed the trial court's decision. *Id.* at \*7, 9. *See also Woods*, 2011 WL 1662900, at \*2 (affirming the trial court's decision to decline to adopt the parenting agreement on which the parties had agreed); *In re D.M.H.*, 2006 WL 3216306, at \*9 ("[I]f the trial judge concludes that there was, in fact, a written, signed, mediated agreement between the parties, a 'best interest' analysis is still required in order to approve the mediated parenting plan.").

We now apply these standards to the decision of the trial court below. It is undisputed on appeal that Mother agreed to the mediated parenting plan and signed it, and the next day repudiated it, asking for an evidentiary hearing on the children's best interest. The trial court declined to grant an evidentiary hearing, beguiled by the holding of our Supreme Court in *Barnes v. Barnes*, 193 S.W.3d 495 (Tenn. 2006).

In ***Barnes***, the parties, parents of one minor child, executed a marital dissolution agreement (MDA). ***Id.*** at 496-97. After the husband repudiated the MDA, the wife sought to enforce it. ***Id.*** at 497. After engaging in mediation, the parties agreed to a parenting plan, but all other issues remained unresolved. ***Id.*** After hearing testimony on fault, the trial court entered an order finding that the wife was at fault for the divorce, but otherwise enforcing the MDA as a contract on issues concerning the parties' assets, liabilities, and spousal support. ***Id.*** The husband appealed, ultimately appealing to the Supreme Court.

On appeal, the ***Barnes*** Court observed that prior cases had established that an MDA "is a contract." ***Id.*** at 498 (quoting ***Johnson v. Johnson***, 37 S.W.3d 892, 896 (Tenn. 2001)). It stated that "agreements made respective to marriage, . . . which . . . determine the rights of each spouse in the marital property and to resolve other issues, such as spousal support . . . consistently have been found to be valid and enforceable contracts between the parties." ***Id.*** (citations omitted). The ***Barnes*** Court concluded that a written MDA reached in mediation and signed by both parties is a contract, "the enforceability [of which is] governed by contract law." ***Id.*** at 498-99.

It can readily be seen that ***Barnes*** is inapposite to the instant case. In ***Barnes***, the parties' parenting issues were mediated separately and were not at issue; the husband disputed the trial court's decision to enforce the MDA as to issues not related to the parties' child, such as division of the marital property and spousal support. ***Id.*** at 497. In contrast, in the case at bar, the mediated agreement at issue involved *only* parenting issues. Thus, the holding in ***Barnes***, utilizing contract analysis, is inapplicable.

In this case, the trial court below specifically applied the contract analysis utilized in ***Barnes***. At the hearing, the trial court heard the parties' cross-motions, to enforce the mediated agreement or to set it aside. The trial judge rejected Mother's request for an evidentiary hearing, stating that he was "forced under the Barnes rationale to enforce the mediated agreement." The ensuing written order was styled as "Order Enforcing Mediation Custody Agreement," and clearly analyzed whether the mediated parenting plan was "a valid and enforceable contract," specifically citing ***Barnes***.

As noted above, a trial court may be found to have abused its discretion "by applying an incorrect legal standard." ***Andrews***, 2010 WL 3398826, at *16. Here, by concluding that it was bound under ***Barnes*** to apply a contract analysis to the parties' mediated parenting plan, the trial court applied an incorrect legal standard. Under ***Tuetken***, "parents cannot bind the court with an agreement affecting the best interest of their children." ***Tuetken***, 320 S.W.3d at 272. Even if Mother had not repudiated the mediated parenting plan, the "trial court is not . . . bound by such an agreement, but instead must evaluate whether the agreed arrangement

-10-

is in the best interest of the children." *Greer*, 2010 WL 3852321, at *7. To hold otherwise would be to supplant the trial judge as the ultimate arbiter of the best interest of the children within its purview. Thus, we must conclude that, by applying contract analysis to the mediated parenting plan, the trial court abused its discretion by applying an incorrect legal standard.

In addition to contract analysis, the trial court also indicated its trust in the mediation process to produce an agreement that was in the best interest of the parties' children. The trial court noted specifically that the attorneys representing the parties in this cause regularly practiced before the trial court "and are competent attorneys in good standing." While trusted attorneys are an invaluable asset to the trial court, and the skill and integrity of the parties' attorneys may be considered in the ultimate decision, we note that the trial court cannot simply defer to the judgment of the parties' attorneys regardless of their trustworthiness. Under *Tuetken*, if the trial judge cannot delegate the best interest determination to a chosen arbitrator, he likewise cannot delegate it to the parties' lawyers.

In its oral ruling, the trial court also stated that "part and parcel of a settled permanent parenting plan, mediated, negotiated permanent parenting plan is a pledge to the Court, that the plan as negotiated is in the best interests of the children . . . . I am sure that's part and parcel of what the negotiations were without having to go into it." Similarly, the final Order Enforcing Mediation Custody Agreement stated that "implicit in this mediation agreement is the understanding that it was proposed in good faith and in the best interest of the minor children." While this is always the court's fond hope, it cannot be its presumption. We observed in *Greer* that, while a mediated parenting plan agreement "would ideally reflect the parties' considered judgment on the arrangement that would best fit the needs of their children," experience tells us that a host of other factors can result in a mediated agreement that does not serve the children's best interests. *Greer*, 2010 WL 3852321, at *7. Under *Tuetken* and the applicable statutes, the trial judge cannot simply presume that a mediated parenting plan is in the children's best interest, particularly where, as here, it is repudiated by one of the parties prior to being incorporated into a court order. Instead, the trial judge must affirmatively ascertain whether it is in their best interest.

In the final Order Enforcing Mediation Custody Agreement, the trial court also stated that, to determine whether the mediated parenting plan was in the best interest of the parties' children, the trial judge reviewed "the history of the parties' specific circumstances and the past and present circumstances of the minor children, (as gleaned from the Court file, the pleadings and from argument of counsel) . . . ." After doing so, the trial court concluded that the mediated parenting plan was in the children's best interest.

In this case, however, such a review does not provide a sufficient basis for determining whether the arrangement set forth in the mediated parenting plan is in the children's best interest. We recognize that, although the parties' original divorce was pursuant to an agreed MDA, post-divorce proceedings had resulted in evidentiary hearings on the parties' parenting arrangement. In late 2003, the trial court conducted several hearings on Father's petition to modify the agreed parenting plan, which resulted in the January 2004 order requiring Mother to have another adult in the home when the children were present. Years later, Father filed another petition to modify the parenting plan, resulting in an evidentiary hearing in November 2008, truncated after Mother's direct examination by Father's counsel. This resulted in the November 2008 "Agreed Temporary Custody Order" designating Father as the temporary primary residential parent. Thus, the trial judge below had heard testimony in the past from both Mother and Father regarding parenting issues.

Nevertheless, the mediation, and the mediated parenting plan, arose from Mother's December 2009 petition for modification, seeking to regain her designation as the children's primary residential parent. In her petition, Mother made numerous allegations, asserting that Father did not properly care for the parties' children. At the time of the July 2010 hearing on the mediated parenting plan, the trial court had before it no evidence or testimony on Mother's allegations. Even assuming that the trial judge was skeptical of Mother's allegations based on his observation of her testimony in earlier hearings, the record does not include *any* evidence on the children's well-being since Father was designated as the temporary primary residential parent and the children moved to Father's home in Georgia. Thus, there was little to "glean[] from the Court file" to ascertain whether Mother's allegations were valid or whether the parenting arrangement in the mediated parenting plan was in the children's best interest. Under these circumstances, we must conclude that the trial court abused its discretion by refusing to hear any evidence on whether the parenting arrangement reflected in the mediated agreement was in the best interest of the parties' children.

We do not hold that, in *every* instance in which a trial court is presented with a mediated parenting plan, the trial court must conduct a full evidentiary hearing. Divorces are like snowflakes; each one is different. In some cases, the trial court is called upon to determine custody with no prior exposure to the parties; in other cases, by the time the trial court decides custody, the trial judge has come to know the parties all too well. We hold only that the trial judge, and the trial judge alone, has the solemn duty to determine whether a given parenting arrangement is in the best interest of a child in his charge, and that the record must reflect a sufficient basis for such a determination. In this case, we hold that the trial court abused his discretion by finding that the parenting arrangement in the mediated agreement was in the children's best interest, in the absence of evidence to support such a finding.

Therefore, the Order Enforcing Mediation Custody Agreement must be reversed, and the cause must be remanded for an evidentiary hearing.[5]

## CONCLUSION

The decision of the trial court is reversed, and the cause is remanded for further proceedings consistent with this Opinion.  Costs on appeal are assessed against Plaintiff/Appellee Glen Allen Fletcher, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE

---

[5]We note that Father remains the primary residential parent pursuant only to a "temporary" order.  This can affect the burden of proof, and whether a material change in circumstances must be shown, in the proceedings on remand.  In addition, while the cause must be remanded for an evidentiary hearing, we express no opinion on the evidence to be heard, and in particular do not address Mother's motion for the trial court to hear testimony from the parties' minor children.