IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned On Briefs October 8, 2012 Session

# IN THE MATTER OF: CHASE B.S., ET AL.

### Direct Appeal from the Juvenile Court for Shelby County
### No. X6145, X0784, X1494 and X1512    Curtis S. Person, Jr., Judge

### No. W2011-02334-COA-R3-JV - Filed November 30, 2012

The trial court dismissed "petitions for medical support" of non-marital children filed by the
Department of Human Services as inconsistent with the child support statutes and guidelines.
We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed
### and Remanded

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and
J. STEVEN STAFFORD, J., joined.

Robert E. Cooper, Jr., Attorney General and Reporter, William E. Young, Solicitor General
and Warren Jasper, Senior Counsel, for the appellant, State of Tennessee Department of
Human Services.

## OPINION

This appeal arises from four petitions for medical support filed in the Juvenile Court
for Shelby County by the Department of Human Services ("DHS") on behalf of four mothers
of non-marital children ("Mothers") against the children's fathers ("Fathers"). In each of the
petitions, DHS alleged Respondent Father owed a duty of support to a minor child, that the
minor child was in the care or custody of Petitioner Mother, and that Mother "hereby makes
application for medial support assistance pursuant to Title IV-D of the Social Security Act
and 42 U.S.C.A. § 1396k." DHS prayed the court to "establish medical support of said
children pursuant to 42 U.S.C.A. § 1396k." DHS did not pray for additional child support,
nor did it assert that prior support orders had been made by the court. Following hearings
before the magistrate, the magistrate dismissed the petitions. DHS requested a hearing of
each matter before the juvenile court judge, which conducted a consolidated hearing on
August 9, 2011. The trial court determined that it could not "parse" medical support from

child support, and that medical support could be awarded only in the context of child support under the guidelines. It found that DHS has not prayed for child support, that no child support worksheet had been entered in three of the four matters, and that it could not hear the matter of child support absent the statutorily required notice to Fathers. The trial court accordingly dismissed the petitions, and DHS filed notices of appeal to this Court.

### *Issue Presented*

DHS presents the following issue for our review:

> Whether the Shelby County Juvenile Court abused its discretion when it found in these four consolidated matters that it must have the ability to set child support before it may determine medical support.

### *Discussion*

The issue presented by this lawsuit, as we perceive it, is whether, in a Title IV-D action for support, the trial court may order "medical support only" without proof of the Defendant Father's income and without evidence to support a deviation from the child support guidelines. DHS asserts that an action seeking only medical support for non-marital children is permitted to effectuate its responsibility under 42 U.S.C.A. § 654 and Tennessee Code Annotated § 71-5-115 and in light of the assignment of rights provided in section 71-5-117. Although it cites no case law in its brief to support its contention that an action for medical support of a child is distinct from an action for child support and, therefore, not subject to the child support guidelines, in the trial court DHS asserted that its position was supported by our holding in *Corbin v. Corbin*, No. W2008-00437-COA-R3-CV, 2009 WL 454134 (Tenn. Ct. App. Feb. 24, 2009). The trial court, on the other hand, determined that it could not deviate from the child support guidelines to set "medical support only" without considering the statutory factors and the requisites of the child support guidelines. We agree with the trial court.

As initial matters, we note that the petitions filed in this case were not petitions to modify child support, that no prior child support orders had been entered in the matters, and that no orders of parentage had been entered in accordance with Tennessee Code Annotated § 36-2-311.[1] The parents of the children for whom DHS sought medical support were not and had never been married and apparently were not living together. Further, notwithstanding DHS's contention in its brief that it "will not always have authority under

---

[1] It does not appear, from the record transmitted to this Court, that paternity was disputed in the four actions.

Title XIX to seek a support award . . . because these matters do not always fall under Title IV-D granting the Department authority to seek child support on behalf of a custodial parent[,]" it is not disputed that the petitions in these matters were filed pursuant to the authority granted under Title IV-D of the Social Security Act. Accordingly, future hypothetical actions which may not be encompassed by Title IV-D are not before us.

The provisions of Title 71 of the Tennessee Code also are not disputed in this case. As DHS asserts, Title 71 authorizes the State to seek reimbursement from responsible parties for medical assistance benefits. Tennessee Code Annotated § 71-5-115(2012) provides:

> To the extent permitted by federal law, the department may require or permit that responsible parties of a recipient of medical assistance supplement or reimburse for any benefit or benefits rendered to the recipient pursuant to the part.

Tennessee Code Annotated § 71-5-117 permits DHS to recover medical assistance provided to a recipient from a responsible party. The section provides, in pertinent part:

> (b) Upon accepting medical assistance, the recipient shall be deemed to have made an assignment to the state of the right of third party insurance benefits to which the recipient may be entitled. Failure of the recipient to reimburse the state for medical assistance received from any third party insurance benefits received as a result of the illness or injury from which the medical assistance was paid may be grounds for removing the recipient from future participation in the benefits available under this part; provided, that any removal from participation shall be after appropriate advance notice to the recipient and that the provider of service shall not be prevented from receiving payment from the state for medical assistance services previously furnished the recipient, and that nothing in this subsection (b) shall require an insurer to pay benefits to the state that have already been paid to the recipient.

> . . . .

> (d)(1) To the extent necessary to reimburse the department for expenditures for its costs for services provided for any child eligible for medical services under Title XIX of the federal Social Security Act, compiled in 42 U.S.C. § 1396 et seq., the department shall have a right of action against, and shall be permitted to garnish the wages, salary, or other employment income of, any person who:
> (A) Is required by a court or administrative order to

provide coverage of the costs of health services to a child who is eligible for medical assistance under Title XIX of the federal Social Security Act;

  (B) Has received payment from a third party for the costs of such services provided to such child; and

  (C) Has not used such payments from the third party to reimburse, as appropriate, either the other parent or guardian of such child or the provider of such services.

 (2) *The claims by the department for the costs of such services shall be subordinate to any claims for current or past-due child support.*

Tenn. Code Ann. § 71-5-117(b)&(d)(2012)(emphasis added).[2]

In its brief, DHS relies on these provisions of Title 71 and on 42 U.S.C.A. § 654 for the proposition that it may assert its right to recover benefits in an action for support that does not seek child support. Its argument, as we understand it, is that 42 U.S.C.A. § 654 provides that the State must provide services relating to the enforcement of child support obligations as appropriate, and in these cases, because the State was providing only medical assistance, an action seeking medical support only, and not child support, is appropriate. We disagree.

42 U.S.C.A. § 1396k provides for the "assignment, enforcement, and collection of rights of payments for medical care[.]" It states:

(a) For the purpose of assisting in the collection of medical support payments and other payments for medical care owed to recipients of medical assistance under the State plan approved under this subchapter, a State plan for medical assistance shall--

 (1) provide that, as a condition of eligibility for medical assistance under the State plan to an individual who has the legal capacity to execute an assignment for himself, the individual is required--

  (A) to assign the State any rights, of the individual or of any other person who is eligible for medical

---

[2]Formerly Tennessee Code Annotated § 71-5-117(e). We note that, in the 2012 bound replacement volume 12B containing Title 71, former subsection 117(e) is contained at 117(d), and former subsection 117(d) is contained at 117(c). Former subsection 117(c) was deleted by 2010 Pub.Acts c. 776, § 1, effective January 1, 2011. We observe that the version of the Code currently available on Westlaw does not reflect the alterations made in the bound volume.

assistance under this subchapter and on whose behalf the individual has the legal authority to execute an assignment of such rights, to support (specified as support for the purpose of medical care by a court or administrative order) and to payment for medical care from any third party;

(B) to cooperate with the State (i) in establishing the paternity of such person (referred to in subparagraph (A)) if the person is a child born out of wedlock, and (ii) in obtaining support and payments (described in subparagraph (A)) for himself and for such person, unless (in either case) the individual is described in section 1396a(l)(1)(A) of this title or the individual is found to have good cause for refusing to cooperate as determined by the State agency in accordance with standards prescribed by the Secretary, which standards shall take into consideration the best interests of the individuals involved; and

(C) to cooperate with the State in identifying, and providing information to assist the State in pursuing, any third party who may be liable to pay for care and services available under the plan, unless such individual has good cause for refusing to cooperate as determined by the State agency in accordance with standards prescribed by the Secretary, which standards shall take into consideration the best interests of the individuals involved; and

(2) provide for entering into cooperative arrangements (including financial arrangements), with any appropriate agency of any State (including, with respect to the enforcement and collection of rights of payment for medical care by or through a parent, with a State's agency established or designated under section 654(3) of this title) and with appropriate courts and law enforcement officials, to assist the agency or agencies administering the State plan with respect to (A) the enforcement and collection of rights to support or payment assigned under this section and (B) any other matters of common concern.

(b) Such part of any amount collected by the State under an assignment made under the provisions of this section shall be retained by the State as is necessary to reimburse it for medical assistance payments made on behalf of

an individual with respect to whom such assignment was executed (with appropriate reimbursement of the Federal Government to the extent of its participation in the financing of such medical assistance), and the remainder of such amount collected shall be paid to such individual.

42 U.S.C.A. § 654 provides, in relevant part, that a state plan for child support must provide that the State will provide services relating to establishing paternity or child support with respect to each child for whom medical assistance is provided under subchapter XIX of the chapter. 42 U.S.C.A. § 654 It states, in relevant part:

A State plan for child and spousal support must - -
(1) provide that it shall be in effect in all political subdivisions of the State;
(2) provide for financial participation by the State;
(3) provide for the establishment or designation of a single and separate organizational unit, which meets such staffing and organizational requirements as the Secretary may by regulation prescribe, within the State to administer the plan;
(4) provide that the State will--
 (A) provide services relating to the establishment of paternity or the establishment, modification, or enforcement of child support obligations, as appropriate, under the plan with respect to--
  (i) each child for whom (I) assistance is provided under the State program funded under part A of this subchapter, (II) benefits or services for foster care maintenance are provided under the State program funded under part E of this subchapter, (III) medical assistance is provided under the State plan approved under subchapter XIX of this chapter, or (IV) cooperation is required pursuant to section 2015(l)(1) of Title 7, unless, in accordance with paragraph (29), good cause or other exceptions exist;
  (ii) any other child, if an individual applies for such services with respect to the child; and
 (B) enforce any support obligation established with respect to--
  (i) a child with respect to whom the State provides services under the plan; or
  (ii) the custodial parent of such a child;
(5) provide that (A) in any case in which support payments are collected for an

individual with respect to whom an assignment pursuant to section 608(a)(3) of this title is effective, such payments shall be made to the State for distribution pursuant to section 657 of this title and shall not be paid directly to the family, and the individual will be notified on a monthly basis (or on a quarterly basis for so long as the Secretary determines with respect to a State that requiring such notice on a monthly basis would impose an unreasonable administrative burden) of the amount of the support payments collected, and (B) in any case in which support payments are collected for an individual pursuant to the assignment made under section 1396k of this title, such payments shall be made to the State for distribution pursuant to section 1396k of this title, except that this clause shall not apply to such payments for any month after the month in which the individual ceases to be eligible for medical assistance[.]

42 U.S.C.A. § 652(f) provides:

The Secretary shall issue regulations to require that State agencies administering the child support enforcement program under this part enforce medical support included as part of a child support order whenever health care coverage is available to the noncustodial parent at a reasonable cost. A State agency administering the program under this part may enforce medical support against a custodial parent if health care coverage is available to the custodial parent at a reasonable cost, notwithstanding any other provision of this part. Such regulation shall also provide for improved information exchange between such State agencies and the State agencies administering the State medicaid programs under subchapter XIX of this chapter with respect to the availability of health insurance coverage. For purposes of this part, the term "medical support" may include health care coverage, such as coverage under a health insurance plan (including payment of costs of premiums, co-payments, and deductibles) and payment for medical expenses incurred on behalf of a child.

In its brief to this Court, DHS acknowledges that the actions filed in the trial court were filed as child support enforcement services pursuant to Title IV-D of the Social Security Act, 42 U.S.C. § 1396k, and Tennessee Code Annotated § 71-3-124. Section 71-3-124 provides:

(a)(1) Each applicant or recipient who receives or authorizes payment of public or temporary assistance pursuant to Title IV-A or IV-E of the Social Security Act, compiled in 42 U.S.C. § 601 et seq. And 42 U.S.C. § 670 et seq., respectively, or any successor program providing temporary assistance or

foster care or adoption assistance shall be deemed to have assigned to the state any rights to support from any other person such applicant or recipient may have:

(A) In the applicant's own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid; and

(B) That have accrued at the time such assignment is executed.

(2) Each payment shall constitute "receipt" for purposes of determining when the assignment is executed.

(3) During the terms of such assignment, the department shall be subrogated to the rights of the child or children or the person having custody to collect and receive all child support payments.

(4) The department has the right to initiate any support action in its own name or in the name of the recipient under existing laws of this state and to recover any payments ordered by the courts of this or any other state.

(5) In the exercise of its subrogation rights, the department shall give the person having custody prior notice of any action taken to enforce or modify support and shall inform the custodian of the right to intervene to protect any future interest; provided, that failure to provide such notice shall not be a defense to the obligor in any proceeding.

(6)(A) Notwithstanding any other provision of law to the contrary, neither the department of human services, nor any Title IV-D child support contractor of the department, nor any recipient of public assistance in this or any other state or territory, shall be required to demonstrate to a court or administrative tribunal in this state that the caretaker of the child for whom child support is sought is vested with any more than physical custody of the child or children in order to have standing to petition for child support from the legal parent of the child or children for whom support is sought, or to seek enforcement or modification of any existing orders involving such child or children.

(B) Legal custody of a child to whom a child support obligation is owed shall not be a prerequisite to the initiation of any support action or to the enforcement or modification of any support obligation, whether or not the obligation has been assigned to this state or any other state or territory by operation of law.

(b) The department shall certify to the clerks of the appropriate state courts that an assignment of any and all rights, title and interest in support rights has been made to this state by a public assistance or temporary assistance recipient of this state. The department may also, in its discretion, certify to the clerk of the appropriate court in this state that a recipient of

public assistance or temporary assistance in another state has assigned support rights to that state pursuant to federal law. Upon receipt of this certification, the clerks of the appropriate state courts shall transmit support payments that they receive on behalf of such public assistance or temporary assistance recipient. The clerk shall transmit the amount directly to the agency specified by the department in accordance with § 36-5-101. The clerks are to identify these payments by the names of the parties involved in the cause of action and by the docket number of the cause of action. These support payments shall be transmitted to the department or the specified agency continuously until the department notifies the clerks of the appropriate state courts that it is no longer necessary to do so. The department shall send to each recipient notice of payments received in such recipient's behalf quarterly.

(c)(1) Upon the filing of an application by an individual not otherwise eligible for support services under this section, the department may initiate support actions for an individual, in accordance with the provisions of Title IV-D of the Social Security Act, compiled in 42 U.S.C. § 652 et seq., as amended.

(2) The department or any entity, public or private, that contracts with the department to establish paternity or to establish, modify or enforce child or spousal support pursuant to the provisions of Title IV-D of the Social Security Act shall have authority and standing to file any legal actions to establish paternity or to establish, modify or enforce child or spousal support in any judicial or administrative proceeding on behalf of the department and the state for persons who have assigned rights of support to the department pursuant to this section, or who have otherwise applied for child or spousal support services pursuant to the provisions of subdivision (c)(1) or Title IV-D of the Social Security Act. The department or its contractors may file such legal actions without the necessity of intervening in an existing action or naming the state as a party to the action. The department or its contractors shall not be required to provide proof that the obligor, the obligee or the child has applied for or is receiving Title IV-D child support services in order to meet the requirements for conducting Title IV-D child support judicial or administrative actions.

(d) The provision of services under a child support enforcement program that includes services by an attorney or an attorney's representative employed by, under contract to, or representing the department shall not create an attorney-client relationship with any party other than the state. Attorneys employed by or under contract to the department shall have an affirmative duty to notify individuals applying for child support services or temporary assistance for needy families (TANF) recipients or recipients of any successor

program providing temporary assistance whose rights to support have been assigned, who contact or are contacted by the attorney or other child support enforcement program staff that any legal services provided by the child support enforcement program are solely on behalf of the state, and that no incidents of the lawyer-client relationship, including the confidentiality of lawyer-client communications, exist between the attorney and the applicant or recipient. No such duty shall exist when the applicant for services is another governmental agency acting on behalf of an individual and there is no direct contact between the child support enforcement program and the individual seeking support.

(e)(1) As a condition of eligibility for consideration of the caretaker relative in the request for assistance under the TANF program or any successor program providing temporary assistance, each applicant for or recipient of benefits under this program shall cooperate, unless good cause not to cooperate is shown to exist in accordance with 45 Code of Federal Regulations, Sections 232.40 through 232.49 as they may be amended, with the department and its Title IV-D contractors in:

(A) Identifying and locating the parent of a child for whom aid is claimed;

(B) Establishing the paternity of a child born out of wedlock for whom aid is claimed;

(C) Obtaining support payments for the applicant or recipient and for a child for whom aid is claimed; and

(D) Obtaining any other payments or property due the applicant or recipient of the child.

(2) Cooperation with the department and its Title IV-D contractors shall be defined by the department in rules that are consistent with federal regulations.

(3) If a caretaker relative fails to cooperate with the department or its Title IV-D contractors under subdivision (e)(1), the department shall, consistent with federal regulations, deny assistance to that caretaker relative of a child or children who are otherwise eligible for TANF or any successor program providing temporary assistance and it shall, consistent with federal regulations, provide assistance to the eligible child in the form of a protective payment, but such assistance will be determined without regard to the needs of the caretaker relative.

(4) The commissioner shall promulgate rules to carry out this section.

Tenn. Code Ann. § 71-3-124 (2012).


Reading the statutes together as a whole, we agree with the trial court that the cause

of action through which DHS seeks to assert its right to reimbursement is, simply, an action for child support and that, as such, the action is governed by the child support statutes and guidelines. DHS's argument in the trial court was somewhat unclear. On one hand, it asserted that medical support is not child support and, therefore, the child support guidelines were not applicable. On the other hand, it asserted that child support may consist of medical support only and may be ordered without application of the guidelines. The statutory scheme outlined above, however, gives DHS the authority to bring a support action seeking child support for the benefit of a non-marital child, and permits it to recover assistance benefits paid by the State. The Title IV-D action is not merely an action to recover benefits, but to establish a duty of support in the first instance. The current actions are child support actions in which DHS attempts to waive the Mothers' right to all support other than medical support, and in which DHS seeks to simply ignore the child support guidelines. DHS effectively asserts that Tennessee Code Annotated 71-5-115 & 117 permits the trial court to enter child support orders limited to the recoupment of State-provided benefits. We disagree.

Considered together, the statutes of Tennessee "impose a duty on trial courts to protect the best interests of children." *Tuetken v. Tuetken*, 320 S.W.3d 262, 271 (Tenn. 2010). This duty "comports with the long-standing notion that the state stands in *parens patriae* of the minor children within its borders." *Id.* Parties may not relieve a trial court of the duty to ensure that disputes are resolved in the best interests of the child. *Id.* at 272. Thus, for example, parents may not enter into private child support agreements that circumvent the child support obligations imposed by the statutes. *Id.* (citing *Berryhill v. Rhodes*, 21 S.W.3d 188, 192 (Tenn. 2000)). Parents also cannot bind the court on matters of child support by submitting the matter to an arbitrator. *Id.*

It is well-settled that the child support guidelines govern both the process and criteria for determining a parent's child support obligation. *E.g., Reeder v. Reeder*, 375 S.W.3d 268, 275 (Tenn. Ct. App. 2012)(citation omitted). The amount of support that is determined by a correct application of the formula contained in the guidelines is the presumptive child support amount. *Id.* Although the presumptive support amount is rebuttable and the trial court may, in its discretion, deviate from the guidelines, any deviation must be supported by specific written findings stating why application of the guidelines would be unjust or inappropriate. *Id.* The trial court's discretionary decision to deviate from the child support guidelines must nevertheless "take into consideration the applicable law and the relevant facts." *Id.* (citing *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)).

In the current case, DHS petitioned the trial court for orders of support that deviated from the child support guidelines and that considered neither the applicable law nor the relevant facts. The trial court determined that it could not set "medical support only" without reference to the child support guidelines. We review a trial court's decision with respect to

-11-

whether a deviation from the child support guidelines is warranted under an abuse of discretion standard, and will uphold the trial court's determination if the trial court has applied the correct legal standard and its decision is not clearly unreasonable. *Id.* Having determined that the trial court applied the correct legal standard in this case, we find no abuse of discretion on the part of the trial court.

### *Holding*

In light of the foregoing, we affirm the judgment of the trial court. This matter is remanded to the trial court for the collection of costs. Costs on appeal are taxed to the Appellant, the State of Tennessee Department of Human Services.

_____
DAVID R. FARMER, JUDGE