# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
September 17, 2019 Session

## ROBIN DREWRY LUTTRELL (WASSENBERG) v. SAMUEL RICHARD WASSENBERG

**Appeal from the Chancery Court for Fayette County**
**No. 15654-PP        Martha B. Brasfield, Chancellor**

———————————————————

### No. W2017-02443-COA-R3-CV

———————————————————

Five years after the parties' divorce, the father relocated to another state. Both parents moved for modification of the joint parenting plan, seeking to be named primary residential parent. Finding that the father's move was a material change in circumstances, the court entered a temporary plan that designated the mother as primary residential parent. Before trial, the court sanctioned the father for his complete failure to respond to the mother's Rule 34 requests. After a trial, the court found that modification of the parenting plan was in the child's best interest. The modified plan named the mother the primary residential parent and substantially reduced the father's parenting time. The court also modified child support retroactive to the date of the mother's petition and found the father in both civil and criminal contempt. Because the court's final order lacks sufficient findings of fact and conclusions of law to explain its modification decision, we vacate that part of the court's order and remand for entry of an order in compliance with Rule 52.01 of the Tennessee Rules of Civil Procedure. We also vacate the post-trial civil contempt sanctions imposed by the court for the father's violation of the modified plan. In all other respects, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated in Part; Affirmed in Part; and Case Remanded

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which KENNY ARMSTRONG and CARMA DENNIS MCGEE, JJ., joined.

Rachael E. Putnam and Nelson T. Rainey, Memphis, Tennessee, for the appellant, Samuel Richard Wassenberg.

Laura D. Rogers, Memphis, Tennessee, for the appellee, Robin Drewry Luttrell (Wassenberg).

# OPINION

## I.

### A.

Robin Drewry Luttrell ("Mother") and Samuel Richard Wassenberg ("Father") divorced in 2011. As part of the divorce decree, the Fayette County Chancery Court adopted the parents' agreed permanent parenting plan for their minor child. The agreed plan provided for equal parenting time and designated both parents as primary residential parent. All parenting decisions were to be made jointly. In lieu of child support, the plan required the parents to divide all expenses for the child equally, "including tuition, clothing, uniforms, tutoring, health insurance, school supplies/books, extracurricular [activities, and] uninsured medical and orthodontic expenses."

Father moved to Georgia when the child was twelve. For the next sixty days, the child lived exclusively with Mother while the parents discussed changes to the existing parenting plan. Unable to reach an agreement, in May 2016, Mother petitioned to modify the parenting plan and to hold Father in civil contempt. Mother alleged that Father's move was a material change in circumstances warranting a change in custody. She asked to be named primary residential parent with sole decision-making authority. Her proposed parenting plan reduced Father's parenting time to 50 days and required him to pay $561 per month in child support in addition to paying half of the child's educational and uninsured medical expenses.

Mother's civil contempt petition was based primarily on Father's alleged failure to pay his share of the child's expenses as required by the existing plan. According to Mother's petition, Father owed her over $4,000 dating back to 2013.

Mother also claimed that Father was pressuring the child to agree to live with him in Georgia. Mother requested an injunction forbidding either parent from discussing the litigation with the child. And in July 2016, the court entered a consent order forbidding the parties from discussing the litigation or the issues being litigated with the child.

Father agreed that a material change had occurred. In his counterpetition, Father asked to be named primary residential parent based on his belief that the child preferred to live with him. Father's proposed plan gave him 285 days of residential parenting time and Mother, 80.

## B.

The child had significant learning disabilities. At the end of her most recent school year, the administrators at her school recommended that the child transfer to a school better suited to her needs. They suggested two local schools with programs for children with learning disabilities. After researching the schools, Mother decided that a private school in Memphis (the "Memphis School") was the better choice. Father disagreed. With the new school year fast approaching, Mother asked the court to decide.

After hearing testimony from both parents, the court entered an interim order allowing Mother to enroll the child in the Memphis School and establishing a temporary parenting plan. The court found that the child's educational needs could not be met at her current school and it was in her best interest to enroll at the Memphis School. But the court recognized that the Memphis School was significantly more expensive. So rather than requiring Father to pay half of the higher tuition, the court ordered Father to pay $6,700, the amount he was willing to pay for the child's former school.

The court also found that Father's move was a material change in circumstances warranting modification of the existing plan. The court named Mother the primary residential parent and modified the parenting schedule to allow Father to exercise parenting time "as close to every other weekend as possible." The court directed Father to review the school schedule and notify Mother which weekends he would exercise. Other than these modifications, the existing parenting plan remained in effect pending a final hearing.

Father had tried, albeit unsuccessfully, to compel Mother to bring the child to the hearing. The court explained that, if it desired to hear from the child, it would do so in chambers in the presence of the attorneys, but not the parents. And it reminded the parents of its previous order forbidding discussion of the litigation with the child. The court reiterated that the parents were not to "discuss with the child where she want[ed] to live or ask her which parent she want[ed] to live with."

## C.

Multiple disputes arose between the parties before the final hearing, only some of which are relevant to this appeal. Mother complained that Father continued to avoid paying his share of the child's expenses. Father persisted in his efforts to have the court hear from the child. And both parents filed motions to compel and requests for sanctions alleging the other parent failed to comply with discovery.

In early 2017, Father brought the child to his attorney's office to discuss the child's preference. At Father's request, his attorney drafted an affidavit, which the child signed. A month later, Father's attorney provided Mother with a copy of the affidavit

and indicated she had been asked to file it. Mother objected. Unbeknownst to Mother, the affidavit had been filed in January, presumably by Father. Styled as the child's "election," the affidavit lacked both the signature of an attorney and a certificate of service. When she discovered the affidavit had been filed, Mother moved for Rule 11 sanctions.

Mother also filed a petition to hold Father in criminal and civil contempt. Her criminal contempt petition alleged Father had violated the court's injunction forbidding the parents from talking to the child about the litigation. The petition described several instances in which Father had violated the order, the most egregious example being Father's meeting with the child in his attorney's office. Mother also asked the court to hold Father in civil contempt for his continuing failure to pay his share of the child's expenses and the Memphis School tuition.

D.

The court addressed the pending matters at the pretrial conference. The court granted Mother's Rule 11 motion and ordered the child's affidavit stricken from the record. And the court ordered Father to pay the attorney's fees associated with the Rule 11 motion and hearing.

The court scheduled Mother's criminal and civil contempt petitions to be heard in conjunction with the trial. The criminal contempt hearing would take place on the morning of June 8, before the trial. And at the conclusion of the criminal contempt proceeding, the court would hear proof on the modification petitions and Mother's petition for civil contempt

The court granted Mother's motion for discovery sanctions and denied Father's motion. Mother's discovery requests had been pending since July 2016. Although Father's attorney had misplaced the requests at some point, she had received new copies in February. Three months later, Father had still not responded to Mother's requests for production of documents. The court was unimpressed by Father's arguments that his attorney was busy and that the requests were overly broad. Father never filed an objection or sought a protective order. The court noted that both parents were aware of the urgent need to finalize a modified plan before the start of another school year. With the trial only a month away, the court denied Father's request for another week to respond.

The court denied Mother's motion to dismiss Father's counterpetition as a sanction for discovery abuse. Choosing to impose a lesser sanction, the court directed the attorneys to prepare for trial based on the information that had been provided. "Father [was] not . . . permitted to testify about information that was sought in discovery and not

4

answered . . . [or] to produce documents or other tangible evidence at trial if it was requested in discovery and not produced."

The court also denied Father's most recent motion to hear the child's testimony. The court acknowledged that it was required to consider the child's preference because of her age. *See* Tenn. Code Ann. § 36-6-106(a)(13) (2017). But both parents agreed that the child would testify that her preference was to live with Father. Under the circumstances, the court ruled that "there's no point in her coming to court because we already know what she is going to say." And while Father had listed the child in his interrogatory responses as a fact witness, the court found that he had not disclosed the substance of her anticipated testimony as requested. So the child was precluded from testifying as a fact witness.

E.

As agreed, the first order of business on June 8 was the criminal contempt hearing. Mother testified in support of her petition, but Father chose to remain silent. After the criminal contempt hearing concluded, the court directed the parties to attempt to resolve the remaining issues. Court recessed. When court reconvened, the attorneys announced the terms of an agreement. Most importantly, the parents agreed that Mother would be the primary residential parent. Then the court heard evidence on the remaining modification issues and on Mother's petition for civil contempt. Only Mother and Father testified.

After the trial, the court entered a partial order pending "calculation of attorney's fees and [Father's] child support arrearage." The court found Father in criminal contempt for violating the July 2016 consent order. Father knowingly and willfully violated the order when he discussed litigation issues with the child at his attorney's office. The court sentenced him to ten days in jail. Nine days were suspended for one year provided that he did not violate any further orders of the court.

Based on the parties' stipulation, the court designated Mother primary residential parent. In a subsequent order, the court noted that the proof at trial supported a finding that it was in the child's best interest to name Mother the primary residential parent even without the stipulation. The court recognized that the child had expressed a preference to live with Father, but the court believed that the child's preference had been tainted by Father's actions. The court also found it was in the child's best interest to award Mother sole decision-making authority after consultation with Father.

The court granted Mother's request to modify child support. Child support was set at $513 per month effective June 1, 2016. The court ordered Father to begin paying the new child support amount on July 1, 2017. The court reserved ruling on when Father would begin payment on his $6,669 arrearage.

5

The court also found Father had willfully failed to pay his share of the child's expenses under the original plan and his share of the Memphis School tuition as ordered. The court held Father in civil contempt, but reserved ruling on any punishment.

Mother's request to calculate the amount Father owed for his share of the child's expenses under the original plan was granted. At trial, Mother had submitted a detailed accounting of the expenses she had incurred on behalf of the child since May 2013. The court advised the parties that it would "review the documents provided by Mother to determine the amount of past due support Father owe[d] through May 2017."

F.

Father retained new counsel after the trial. The new attorney requested additional time to respond to Mother's proposed final order. Mother objected, arguing that the delay would allow Father to continue avoiding his obligations. The court granted the request for a continuance but ordered Father to begin payment pending entry of a final order. The court's interim order set a schedule for payment of the Memphis School tuition for the new school year, awarded a judgment for the attorney's fees associated with Mother's Rule 11 motion, and ordered Father to begin monthly payments toward his $6,669 arrearage on September 1.

On November 16, 2017, the court entered a final order. The court expressly found Mother's proposed plan to be in the child's best interest. The court adopted a slightly altered version of Mother's proposed plan. The court's plan named Mother primary residential parent and awarded Father 70 days of parenting time. Proof at trial established that Father was uncooperative and had a history of making decisions that were not in child's best interest. So the court gave Mother sole decision-making authority after consultation with Father.

The court awarded Mother a $4,482.54 judgment for Father's outstanding share of the child's expenses under the original plan. It was undisputed that Father had not paid his share of the child's expenses under the original plan. And he was unable to prove at trial that he was entitled to an offset. Based on Father's stipulation "that he had the ability to pay his court-ordered obligations," the court found that "his failure to pay support was clearly willful." The court sentenced him to five days in jail for civil contempt but allowed for a $3,000 purge payment.

The modified plan required Father to pay $513 in monthly child support plus half of the child's educational and medical expenses, including half of the Memphis School tuition. The court had previously calculated that Father owed $6,669 for retroactive monthly child support. And in the final order, the court awarded Mother a $1,436.63

6

judgment for Father's unpaid portion of the child's educational and uninsured medical expenses for the same period.

The court also found that Mother was entitled to an award of attorney's fees for Father's egregious behavior throughout the litigation. Father was not honest with the court. He opposed simple requests and engaged in conduct that caused unnecessary litigation. He refused to withdraw an inappropriate document filed with the court. He did not comply with discovery. Finding Mother's attorney's fees to be reasonable, the court ordered Father to pay a portion of those fees, or $13,000, plus $195 in expenses.

G.

Father deposited a $23,792 cash bond with the court clerk and requested a stay of judgment pending his appeal to this Court. The cash bond was equivalent to the remaining balance owed under the final order. Mother filed a third motion for contempt alleging that Father was in violation of both the court's final order and the modified parenting plan.

Both parents testified at the hearing on the competing motions. Mother agreed that, since the entry of the court's final order, Father had paid his monthly child support and his half of the Memphis School tuition. But he was not making the required monthly payments on his arrearages or the attorney's fee awards. And he had ignored her requests that he pay $1,792 for his share of the child's educational and medical expenses since the trial.

For his part, Father argued that not all of the expenses included in Mother's invoice were legitimate. But he admitted that he never voiced any objections to Mother. He also submitted a recent pay stub as evidence of his inability to make the payments specified in the final order. He claimed to have no other resources. But when questioned about his cash bond, he conceded that he posted the bond with a portion of the proceeds he received from selling some real property for $70,000.

The court denied Father's request for a stay pending appeal and ordered the cash bond released to Mother. The court also granted Mother's petition for civil contempt. The court questioned Father's credibility, noting his evasiveness during questioning. The court found that Father knew he was responsible for paying his share of the child's expenses. He failed to do so even though he had the ability to pay. The court set a deadline for Father to pay his share of the child's expenses. The court also ordered Father to serve his remaining nine days in jail and to pay Mother's attorney's fees.

7

## II.

Father raises numerous issues on appeal. He contends that the court erred in: (1) imposing discovery sanctions; (2) excluding the child's testimony; (3) finding the parties had stipulated to Mother being the primary residential parent; (4) failing to consider the statutory best interest factors; (5) finding him in civil and criminal contempt; and (6) awarding Mother attorney's fees.

We review most of Father's issues under the deferential abuse of discretion standard of review. *See White v. Beeks*, 469 S.W.3d 517, 527 (Tenn. 2015), *as revised on denial of reh'g*, (Aug. 26, 2015) (decision to admit or exclude evidence); *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 133 (Tenn. 2004) (discovery sanctions); *Hawk v. Hawk*, 855 S.W.2d 573, 583 (Tenn. 1993) (civil contempt); *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007) (custody determination); *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992) (attorney's fees). Our review of discretionary decisions is limited. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009). We do not "second-guess the court below" or "substitute [our] discretion for the lower court's." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). In reviewing discretionary decisions, we consider "(1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions." *Id.* We "review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and . . . the lower court's legal determinations de novo without any presumption of correctness." *Id.* at 525.

### A.

Father contends that the trial court erred in imposing such draconian discovery sanctions. Initially, he points out that Rule 37.02 only authorizes sanctions for violation of a court order. *See* Tenn. R. Civ. P. 37.02. And the trial court never issued an order compelling him to respond to Mother's discovery. But Father cites the wrong rule. The applicable rule is Rule 37.04, which provides that "[i]f a party . . . fails . . . to serve a written response to a request . . . submitted under rule 34, the court in which the action is pending on motion may make such orders in regard to the failure as are just." *Id.* 37.04. Father never responded to Mother's Rule 34 requests. So the court was authorized to take immediate action.

Even so, Father complains that the court's sanction was unjust because it effectively prevented him "from offering any evidence of any kind." We disagree. The court only restricted him from testifying or offering into evidence matters that were requested in discovery and not produced. This type of sanction is specifically permitted

8

in our rules. *See id.* 37.02(B) (authorizing a court to issue an "order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence").

Finally, Father argues that a lesser sanction would have been more appropriate because his former attorney was to blame for his failure to respond. But the trial court took the attorney's conduct into consideration. *See Mansfield v. Mansfield*, No. 01A019412CH0058, 1995 WL 643329, at *6 (Tenn. Ct. App. Nov. 3, 1995) (explaining that a court should take into account whether the failure to act is more attributable to the attorney or the client). Still, the court found fault with Father.

We cannot say that the court abused its discretion in imposing these sanctions. The discovery requests had been pending for almost ten months. Father never objected to the requests or moved for a protective order. And only a limited time remained for the parties to prepare for trial.

B.

Father also challenges the trial court's decision to exclude the child's testimony at trial, arguing that the court failed to consider the child's preference in fashioning the parenting plan. Statute requires a court to consider the "reasonable preference of the child if twelve (12) years of age or older." *See* Tenn. Code Ann. § 36-6-106(a)(13). Generally, a child's preference must be established through proof. *Roberts v. Roberts*, No. W2016-01810-COA-R3-CV, 2017 WL 5634247, at *6 (Tenn. Ct. App. Nov. 22, 2017) (finding the trial court abused its discretion by not allowing evidence of the child's preference into evidence "in any manner or method"). But the decision to exclude the child's testimony does not necessarily violate the statutory mandate. We have affirmed a court's modification decision even though the court excluded an older child's testimony when the record indicated that the court knew and considered the child's preference. *See Hill v. Hill*, No. M2006-01792-COA-R3-CV, 2008 WL 110101, at *6 (Tenn. Ct. App. Jan. 9, 2008).

Here, contrary to Father's assertion, the court did consider the child's preference. In its oral ruling excluding the child's testimony, which was incorporated by reference in its order, the court stated that Mother would "agree that the child wants to live with the father."

C.

Father argues that the record does not support the court's finding of a stipulation at trial for the designation of the primary residential parent. "A stipulation is an agreement between counsel regarding business before the court, . . . which is entered into mutually and voluntarily by the parties." *Overstreet v. Shoney's Inc.*, 4 S.W.3d 694, 701 (Tenn.

9

Ct. App. 1999) (citations omitted). Stipulations bind the parties and prevent them from asserting a contrary position, even on appeal. *Bearman v. Camatsos*, 385 S.W.2d 91, 93 (Tenn. 1964); *Rutherford Builders v. Sec. Fed. Sav. & Loan Ass'n of Murfreesboro, Tenn.*, No. 87-114-II, 1987 WL 18958, at *5 (Tenn. Ct. App. Oct. 28, 1987). While "parties may not stipulate to questions of law, . . . stipulations within the range of possibly true facts and valid legal strategies are allowed." *Overstreet*, 4 S.W.3d at 701.

"A stipulation should discuss the who, what, where and why of the contested matter." *Stumpenhorst v. Blurton*, No. W2000-02977-COA-R3-CV, 2002 WL 1751380, at *4 (Tenn. Ct. App. Feb. 27, 2002) (quoting 83 C.J.S. *Stipulations* § 13 (2000)). In determining whether a stipulation is valid, courts look at a variety of factors such as "whether the party had competent representation of counsel, whether extensive and detailed negotiations occurred, whether the party agreed to the stipulation in open court, and whether, when questioned by the judge, the party acknowledged understanding the terms and that they were fair and equitable." *Id.*

The parties' announcement at trial bears the hallmarks of a stipulation. Mother had previously been named primary residential parent on a temporary basis. So which parent would be named primary residential parent in the final order remained in dispute. The parties, along with their respective counsel, participated in a period of court-ordered negotiation. And they announced their agreement in open court. Our courts recognize "the validity of an oral stipulation made during the course of a trial." *Bearman*, 385 S.W.2d at 93; *Envtl. Abatement, Inc. v. Astrum R.E. Corp.*, 27 S.W.3d 530, 539 (Tenn. Ct. App. 2000). We find no indication in this record that Father did not understand the agreement or objected to it.

We are unpersuaded by Father's contention that the stipulation lacked sufficient detail. "[A] stipulation need not follow any particular form[;] its terms must be definite and certain in order to afford a proper basis for judicial decision." 83 C.J.S. *Stipulations* § 13, Westlaw (database updated June 2020) (footnotes omitted), quoted in *Stumpenhorst*, 2002 WL 1751380 at *4. There is nothing ambiguous about the parties' agreement that Mother would be primary residential parent.

D.

Father's next issue focuses on the trial court's best interest analysis. The parties' stipulation did not relieve the court of its obligation to conduct a best interest analysis. *See Tuetken v. Tuetken*, 320 S.W.3d 262, 272 (Tenn. 2010) ("[I]t is well established that parents cannot bind the court with an agreement affecting the best interest of their children."). The trial court is "the ultimate arbiter of the best interest of the children within its purview." *Fletcher v. Fletcher*, No. M2010-01777-COA-R3-CV, 2011 WL 4447903, at *8 (Tenn. Ct. App. Sept. 26, 2011). In determining best interest, courts must

consider a non-exclusive list of factors found at Tennessee Code Annotated § 36-6-106(a). Tenn. Code Ann. §§ 36-6-404(b), -405(a) (2017).

Father contends that the trial court failed to consider the applicable best interest factors in reaching its modification decision. A court is not required to "list and discuss each factor." *Keisling v. Keisling*, 196 S.W.3d 703, 723 (Tenn. Ct. App. 2005). But the court's findings should demonstrate consideration of the relevant factors. *Id.* Unfortunately, our review is hampered by the lack of factual findings in the court's post-trial orders.

Tennessee Rule of Civil Procedure 52.01 requires trial courts to make specific findings of fact and conclusions of law, even if neither party requests them. Tenn. R. Civ. P. 52.01; *see, e.g.*, *Ward v. Ward*, No. M2012-01184-COA-R3-CV, 2013 WL 3198157, at *14 (Tenn. Ct. App. June 20, 2013). A trial court's order should indicate why and how it reached a decision, and which factual findings led the court to rule as it did. *Pandey v. Shrivastava*, No. W2012-00059-COA-R3-CV, 2013 WL 657799, at *4 (Tenn. Ct. App. Feb. 22, 2013). "Simply stating the trial court's decision, without more, does not fulfill this mandate." *Barnes v. Barnes*, No. M2011-01824-COA-R3-CV, 2012 WL 5266382, at *8 (Tenn. Ct. App. Oct. 24, 2012). "[F]indings of fact are particularly important in cases involving the custody and parenting schedule of children . . . ." *In re Connor S.L.*, No. W2012-00587-COA-R3-JV, 2012 WL 5462839, at *4 (Tenn. Ct. App. Nov. 8, 2012).

Where findings of fact are insufficient, the appellate court may remand to the trial court or "conduct its own independent review of the record to determine where the preponderance of the evidence lies, without presuming the trial court's decision to be correct." *Williams v. Singler*, No. W2012-01253-COA-R3-JV, 2013 WL 3927934, at *10 (Tenn. Ct. App. July 31, 2013); *see also Lovlace v. Copley*, 418 S.W.3d 1, 36 (Tenn. 2013). In determining whether to perform a de novo review, we consider the adequacy of the record, the fact-intensive nature of the case, and whether witness credibility determinations must be made. *See Lovlace*, 418 S.W.3d at 36 (declining to conduct a de novo review because credibility determinations were necessary to resolve factual disputes); *Town of Middleton v. City of Bolivar*, No. W2011-01592-COA-R3-CV, 2012 WL 2865960, *26 (Tenn. Ct. App. July 13, 2012) (stating that independent review is appropriate when the case involves a legal issue or the court's decision is "readily ascertainable"); *see also State v. King*, 432 S.W.3d 316, 328 (Tenn. 2014) (considering the adequacy of the record, the fact-intensive nature of the case, and the ability to request supplementation of the record in determining whether to conduct a de novo review in the context of a criminal case).

We decline to conduct our own review. The best interest analysis is a "particularly fact-intensive process" requiring careful consideration of the relevant statutory factors. *McEvoy v. Brewer*, No. M2001-02054-COA-R3-CV, 2003 WL

22794521, at *5 (Tenn. Ct. App. Nov. 25, 2003). The court heard testimony at multiple hearings. We only have a limited statement of the evidence from the trial and no record of the parties' testimony at previous hearings. And the court made crucial credibility findings. So we vacate the court's modification decision and remand for entry of an order compliant with Rule 52.01. The modified plan will remain in effect as a temporary plan until entry of a final order. The court may, on remand, choose to hear additional proof of the parties' current circumstances before adopting a custody arrangement in the best interest of the child.

## III.

Under Tennessee Code Annotated § 29-9-102(3) (2012), courts have the power to "issue attachments, and inflict punishments for contempts of court" for "[t]he willful disobedience or resistance of any officer of such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts." A finding of contempt may be either civil or criminal in nature. *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 473 (Tenn. 2003). Civil contempt is intended to benefit a private party who has suffered a violation of rights, and "the quantum of proof necessary to convict is a preponderance of the evidence." *Id.* at 473-74. But criminal contempt "is punishment for an offense against the authority of the court." *Sherrod*, 849 S.W.2d at 786 n.4 (citations omitted). "In criminal contempt proceedings, the defendant is presumed to be innocent and must be proven guilty beyond a reasonable doubt." *Doe*, 104 S.W.3d at 474.

Once convicted of criminal contempt, a person loses his presumption of innocence. *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993). On appeal, the person convicted "bear[s] the burden of overcoming their presumption of guilt on appeal." *Id.* We only reverse a criminal contempt finding "if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e).

### A.

Father contends that he never received proper notice that he was charged with criminal contempt. "[P]arties facing a criminal contempt charge [must] be given explicit notice that they are charged with criminal contempt and must also be informed of the facts giving rise to the charge." *Long v. McAllister-Long*, 221 S.W.3d 1, 13 (Tenn. Ct. App. 2006) (citing Tenn. R. Crim. P. 42(b)). At a minimum, the "notice [must] state the time and place of the hearing, allow the defendant reasonable time to prepare a defense, and state succinctly for the accused the 'essential facts' constituting the charge." *Id.*

We conclude that Father received sufficient notice. Mother's petition clearly stated that it was for criminal contempt and included the essential facts. The petition

alleged that Father had violated the court's July 2016 consent order by taking the child to his attorney's office on January 13, 2017, to discuss her preference and sign an affidavit. The court's fiat informed Father that he faced possible incarceration if convicted. And Father was informed in open court on May 1 that the criminal contempt hearing would take place when court convened on June 8, giving Father ample time to prepare a defense.

Civil or criminal contempt requires four elements: (1) the order allegedly violated must be lawful; (2) the order must be clear and unambiguous; (3) the individual charged must have violated the order; and (4) the individual must have acted willfully in violating the order. *Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 354-55 (Tenn. 2008); *Furlong v. Furlong*, 370 S.W.3d 329, 336 (Tenn. Ct. App. 2011) (stating that the four-element analysis outlined in *Konvalinka* applies to criminal and civil contempt actions). Father argues that that the consent order was illegal because it violated the statutory mandate to consider the child's preference. We find Father's argument unavailing. "A lawful order is one issued by a court with jurisdiction over both the subject matter of the case and the parties." *Konvalinka*, 249 S.W.3d at 355. The trial court had both.

Father concedes that he violated a clear and unambiguous order, but maintains that he had no other choice. Good intentions do not preclude a willfulness finding. *See Thigpen*, 874 S.W.2d at 53-54 (finding criminal contempt even though Mother was "following her maternal desire to help her son avoid a disturbing situation."). In the context of criminal contempt, willfulness has two elements: (1) intentional conduct; and (2) a culpable state of mind. *See State v. Beeler*, 387 S.W.3d 511, 523 (Tenn. 2012); *Konvalinka*, 249 S.W.3d at 357. Father acted willfully if he intended to "engage in the conduct" and "to do something the law forbids." *See* Tenn. Code Ann. § 39-11-302(a) (2018); *Konvalinka*, 249 S.W.3d at 357 (citing with approval this definition of willful from *State v. Braden*, 867 S.W.2d 750, 761 (Tenn. Crim. App. 1993)). This record supports a finding that Father's conduct was willful. He deliberately took the child to his attorney's office to discuss her preference knowing his actions violated the court's orders.

B.

The court twice found Father in civil contempt. At trial, the court found Father in civil contempt for his failure to pay his share of the child's expenses and the Memphis School tuition. And post-trial, the trial court found Father in civil contempt for failing to comply with the modified parenting plan.

Turning to the first civil contempt finding, Father again argues lack of notice. But he was served with Mother's petition, which notified him of the allegations, and he had an opportunity to respond. That is all that was required in the context of civil contempt.

13

*State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Grp. Tr.*, 209 S.W.3d 602, 611 (Tenn. Ct. App. 2006).

Father also complains that the court found him in contempt at the same time the court ordered him to pay. We disagree. Father was found in contempt at trial for violating the original parenting plan, entered in 2011.

Finally, Father argues that he lacked the ability to pay. Father had the burden of proving his inability to pay. *See id.* at 612. The trial court found that Father had agreed that he had the ability to pay all of his court-ordered obligations. The evidence in the record does not preponderate against this finding.

Post-trial, the court found that Father had willfully violated the modified parenting plan by not paying half of the child's educational and uninsured medical expenses. As punishment, the court ordered Father to serve the previously suspended nine days in jail and to pay Mother's attorney's fees.

Father again argues inability to pay. The evidence does not preponderate against the court's finding that he had the ability to pay. But in light of our decision to vacate the court's entry of the modified parenting plan, we also vacate the sanctions for violation of the modified plan. *See Tenn. Dep't of Health v. Boyle*, No. M2001-01738-COA-R3-CV, 2002 WL 31840685, at *8 (Tenn. Ct. App. Dec. 19, 2002) (explaining that civil contempt sanctions based on an order reversed on appeal must be reversed as well). So we vacate the court's order that Father serve nine days in jail and the award of attorney's fees. Because the modified plan will remain in place as a temporary plan until a new plan is entered, Father remains obligated to pay his share of the child's educational and uninsured medical expenses.

## IV.

Father's final issue concerns the attorney's fees awards. Father asks us to set aside these awards based on unspecified "underlying errors." In the lone paragraph devoted to this argument, Father failed to cite any legal authority in support of his position or provide any references to the record. *See* Tenn. R. App. P. 27(a)(7). These failings are more than procedural technicalities. Our role is not "to research or construct a litigant's case or arguments for him . . . , and where a party fails to develop an argument in support of his . . . contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 615 (Tenn. 2010).

## V.

Finally, both Mother and Father ask for an award of attorney's fees on appeal. Under Tennessee Code Annotated § 36-5-103(c) (Supp. 2019), we have discretion to

14

award attorney's fees incurred on appeal. *Pippin v. Pippin*, 277 S.W.3d 398, 407 (Tenn. Ct. App. 2008); *Shofner v. Shofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004). We consider the following factors in our decision to award fees: (1) the requesting party's ability to pay the accrued fees; (2) the requesting party's success in the appeal; (3) whether the requesting party sought the appeal in good faith; and (4) any other relevant equitable factors. *Hill v. Hill*, No. M2006-02753-COA-R3-CV, 2007 WL 4404097, at *6 (Tenn. Ct. App. Dec. 17, 2007). In light of these factors, we decline to award either party attorney's fees on appeal.

As an additional ground for an award of attorney's fees, Mother claims that Father's appeal is frivolous. *See* Tenn. Code Ann. § 27-1-122 (2017). The statute authorizing an award of damages for a frivolous appeal "must be interpreted and applied strictly so as not to discourage legitimate appeals." *See Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn. 1977) (citing the predecessor to Tennessee Code Annotated § 27-1-122). A frivolous appeal is one "utterly devoid of merit," *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978), "or taken solely for delay." *Chiozza v. Chiozza*, 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009). We do not find this appeal devoid of merit or perceive that it was taken solely for delay. Thus, we also decline to award attorney's fees on this basis.

## VI.

In the absence of sufficient findings of fact and conclusions of law, we vacate the court's order modifying the parenting plan and remand with instructions for the court to enter an order compliant with Rule 52.01. To avoid disruption for the child, the current, modified plan shall remain in effect as a temporary parenting plan until the court renders its decision on remand.

We affirm the court's finding of criminal contempt. Father had sufficient notice, and he willfully violated a lawful court order. The trial court did not abuse its discretion in finding Father in civil contempt. But we vacate the sanctions imposed for violation of the modified plan. We remand this case for further proceedings in accordance with this opinion.

_____
W. NEAL MCBRAYER, JUDGE

15